No. 14,798.

Needle Rock Ditch Company et al. *v.* Ankenman.
(120 P. [2d] 187)

Decided November 10, 1941.

Messrs. Fairlamb & Fairlamb, for plaintiffs in error.

Messrs. STEWART & BROWN, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

PLAINTIFFS in error, respondents in the district court, seek reversal of a judgment entered in a general water adjudication proceeding in Water District 40 of the State of Colorado, by which defendant in error Ankenman, petitioner in the district court, was awarded a priority as of date March 1, 1889, for one-half cubic foot per second of time of the water naturally flowing in Cottonwood Creek when no waters of the Needle Rock Ditch system are flowing therein, and forty hundredths of a cubic foot of such water when Needle Rock Ditch water is being conveyed through the channel of Cottonwood Creek.

The Needle Rock Ditch Company is a mutual irrigation company which holds a water right on the Smith's Fork of the Gunnison River with a decreed priority date of April 20, 1888. The record discloses that this ditch was completed, and the water used for irrigation, the following spring. The individual respondents, other than the Needle Rock Ditch Company, and petitioner, are owners of lands under the Needle Rock Ditch and entitled to use thereon water from the Needle Rock Ditch in proportion to the number of shares which they own in the company. Petitioner owns three shares of stock. Each share represents one-half cubic foot of water. Petitioner has about sixty-five acres of land under the Needle Rock Ditch to which he applies the water for irrigation. The duty of water in District 40 is one cubic foot per second for forty acres of land. All of the water users—petitioner and the individual respondents—own land so located that it is necessary to carry the water over a natural divide that separates the drainage area of the Smith's Fork of the Gunnison and the area

drained by Cottonwood Creek, a small stream that ultimately finds its way into the Gunnison River but not by way of Smith's Fork. When this water is brought over the divide, it is turned into Cottonwood Creek and the channel of that stream is used for one and one-half or two miles as a conveyer-channel.

Headgates, or proportional dividers, through which petitioner and the individual respondents obtain water to irrigate their lands, are located on the channel of Cottonwood Creek. Very little natural water flows in Cottonwood Creek, and such as there is, except in time of freshet or of melting snow, since the irrigation of the lands on its watershed by Smith Fork water, is largely seepage from the land so irrigated. Petitioner and his predecessors in title have taken their water through what are described as dividers Nos. 2 and 3, beginning the numbering from the first divider after the water is brought across the divide. Petitioner obtains one-half foot of water, represented by one share, through divider No. 2, and one foot of water, represented by two shares, through divider No. 3, also referred to as the Lemon divider. Such is the general topography of the lands of the parties involved in this litigation, and the manner in which water from the Needle Rock Ditch is applied to these lands.

After the general adjudication of water rights in District 40 was closed, petitioner moved to reopen the matter and for permission to re-argue the issues involved therein. Petitioner and respondents are in disagreement as to whether or not petitioner Ankenman, who purchased land and three shares of Needle Rock water stock after the proceedings had been instituted, received notice of their pendency, required to be given under the statute, and whether the showing made by him was sufficient to authorize the court to reopen the proceedings for further hearing and argument. However, respondents contend that the evidence on which the questioned priority was awarded after a reopening, is insuf-

ficient to support the decree, and since we deem this contention well-founded, all other issues regarding matters of procedure and involving notice and sufficiency of showing, become immaterial.

We have examined the record and are of the view that there is no definite or sufficient evidence to show any independent diversion, or work begun to accomplish an independent diversion, or application of the natural flow of Cottonwood Creek to the lands of petitioner or his predecessors in title that antedates the application of Needle Rock water from Smith's Fork by means of the channel of Cottonwood Creek, as a conveyer-channel, to the lands of the shareholders of that company, including the lands owned by petitioner and his predecessors in title. This general statement is subject to an exception of two waste water decrees entered long prior to the present adjudication and conceded by all parties to have priority over the rights herein claimed by petitioner. We have searched the record for any evidence that on March 1, 1889, or at any time prior to March 15, 1889, the date awarded to the Needle Rock Ditch for its priority in the natural flow of Cottonwood Creek which it sought in this adjudication, the petitioner's predecessors in title ever made an appropriation of the direct flow waters of Cottonwood Creek, or that such natural flow was ever used other than as incidental to and in proportion to the use of Needle Rock water. It does appear from the record that Frank Davis, who owned petitioner's land, and upon whose appropriation of the water claimed by petitioner he must rely if entitled to a decree awarding him a priority in the natural flow of Cottonwood Creek, testified in an adjudication proceeding in which the Needle Rock Ditch Company in 1900 sought to have decreed the water diverted by it from Smith's Fork across the divide, in 1888 and 1889, that he had no land irrigated from the Needle Rock Ditch in 1888, and only five acres in 1889, and that other than the Needle Rock water, he had no water right or

water. If he had no water right or water other than his Needle Rock right and water, as he testified in 1900, then it must follow that he had made no appropriation of the natural water of Cottonwood Creek to irrigate his land as of March 1, 1889, the priority date which the court in this adjudication fixes as the date of his priority. This statement by Davis, that he had no water other than from the Needle Rock Ditch, is consistent with the testimony of Fred Hammond who at the time of trial was sixty-seven years of age, and whose testimony indicates that he possessed a clear recollection of that concerning which he testified. He stated that Davis sold his place in 1890 to H. W. Weaver and conveyed to him by deed all the waste water on the place. Mr. Hammond, who was president of the Needle Rock Ditch Company, stated further: "We couldn't concede that, and Mr. Weaver wanted a way out, and he got a lawyer, * * * and we held things up until Mr. Davis made an adjustment with him. Mr. Weaver, he was a very fair man, and he relinquished all right to that water and I don't know what adjustment Mr. Davis made; but he paid him for it." He testified that after that time Mr. Weaver made no requests for waste water to be turned to him. Mr. Hammond asserted that he obtained his information with regard to settling this dispute, from Mr. Davis and Mr. Weaver, and that he was compelled to know about it in order to be able to measure the water.

Henry Deutch, a son-in-law of Davis, who came to the county in 1883, knew nothing about the relinquishment of any waste water right by Mr. Weaver, but corroborated Mr. Hammond's testimony that there was some dispute between his father-in-law, Mr. Davis, and Mr. Weaver, concerning the water which his father-in-law had included in the deed, and that his father-in-law paid money to Mr. Weaver in settlement of the controversy. Mr. Deutch further testified that Davis brought no land under cultivation until "after the Needle Rock

water came." Again he testified that Mr. Davis claimed no independent right to the waters of Cottonwood Creek above that of other people, and that he was surprised when his father-in-law sold it and gave a deed for it. We think Davis' statement in the 1900 hearing is amply corroborated by the testimony of a large number of other witnesses testifying on behalf of both petitioner and respondents to the effect that the dividers herein-above referred to were set to divide the water proportionally, and that when set they remained throughout the irrigating season, and the water that came down Cottonwood Creek, both that which was diverted from Smith's Fork and the natural seepage flow of the stream, was diverted at the dividers in proportion to the number of shares that each divider was set to divert and was applied proportionally by all the shareholders in the Needle Rock Ditch Company to the irrigation of their lands. The record discloses some instances in which, after the Smith's Fork water was turned off, owners of the Davis Ranch, now owned by petitioners, dammed the creek at the Lemon Divider and diverted more than the proportionate part of the stream that otherwise would have flowed through the divider. But these occurrences were infrequent and long after March 1, 1889, and could not serve as evidence of an appropriation effective as of that date.

The Court correctly stated and limited the issue when in one of his rulings he said: "But as I construe the issue here, it is as to whether any beneficial use was made of water in Cottonwood Creek by the claimant here, or his predecessors prior to the time the Needle Rock Ditch was constructed." The finding that such prior use had been made is not supported by the testimony. Such appropriation of the undecreed natural and seepage waters in Cottonwood Creek as is disclosed by the record, was made by the Needle Rock Ditch Company and, no doubt, such use was considered by the trial court in determining the company's right to

the decreed priority in the use of such waters which the court awarded to it, but such use could not serve as the basis of an appropriation by any individual stockholder of the company as against his co-stockholders. The record reveals that the court decreed a certain amount of the natural flow of Cottonwood Creek to the Needle Rock Company, and by virtue of his stock ownership in this company, petitioner will receive his proportionate part of the water so decreed. The record does not disclose that he is entitled to more.

The judgment of the district court is reversed and the cause remanded, further proceedings, if any, to be consistent with the views herein expressed.

Mr. Justice Bakke dissents.

Mr. Chief Justice Francis E. Bouck and Mr. Justice Knous not participating.