No. 15,692.

SCHLUTER ET AL. *v.* BURLINGTON DITCH, RESERVOIR AND LAND COMPANY.

(188 P. [2d] 253)

Decided November 3, 1947.   Rehearing denied December 15, 1947.

Mr. HARRY S. CLASS, for plaintiffs in error.

Mr. W. W. GAUNT, Messrs. BROCK, AKOLT, CAMPBELL & MYER, Mr. CARL L. LOUGH, for defendant in error.

MR. JUSTICE STONE delivered the opinion of the court.

THIS action was brought by plaintiffs Schluter to quiet title to seep water rising in the Burlington ditch, and to enjoin interference with the use thereof. Defendant company, the owner of the Burlington ditch, is a mutual irrigation company. The ditch extends northerly from its headgate on the South Platte river, from which it has a decreed water right. Near its north and lower end, the ditch runs for some distance near the westerly end of Barr Lake and a channel extends approximately at right angles from the ditch easterly 1870 feet to the lake.

This channel, which is referred to in the record as the segment, was formerly used as an intake ditch for filling Barr Lake until about 1912 when the Farmers Reservoir and Irrigation Company raised the dam of the lake and constructed the O'Brien ditch easterly from the Burlington and on a higher grade, since which time Barr Lake has been filled by means of the O'Brien ditch. For several years thereafter the segment was used for diverting storage water from the lake to certain users under the Burlington ditch, but such use was virtually abandoned a number of years prior to the trial of this case. The segment has grown up to swamp vegetation, and seepage water from Barr Lake rises therein. Seepage also rises in the lower end of the main channel of the Burlington ditch, apparently having its source in part from Barr Lake and in part from Third Creek, a tributary of the Platte river, which is crossed by the Burlington ditch some three-quarters of a mile south of its lower terminus. These seepage waters so arising in the segment and in the lower main ditch are the subject of this controversy.

Forty-five feet above the lower end of the Burlington ditch, according to plaintiffs' plat, or twenty-five feet according to his testimony, is located the headgate of the Schluter lateral through which is diverted water belonging to plaintiffs and other stockholders using thereunder. At the very end of the ditch and a few feet north of the west end of the segment, is the headgate of the Brighton lateral ditch which is used for carriage of a much larger amount of water to Burlington stockholders using thereunder, and is operated by a separate company. Through most of the season water is distributed through the Burlington ditch in sections in order to give greater head. Accordingly, when water is being distributed to the upper sections, the lower end of the ditch is dry except for the seep water here involved and any water which may spill over the barrier placed in the stream to permit sectional diversion. This latter is re-

ferred to as "slop over" water, and sometimes it flows down and mingles with the seep water arising in the segment and lower ditch. Each section usually receives its water for forty-eight hours at a time. The Schluter lateral constitutes one section and the Brighton lateral usually from three to six. Accordingly when stockholders' water, decreed to the ditch, is being run in the lower sections, it is there continuously from eight to fourteen days. During such times the seep water is necessarily commingled with the river water.

In 1928 plaintiff William Schluter, as claimant, filed a map and statement in the office of the state engineer making claim to four cubic feet per second of seep water arising in the segment, and in 1930 he filed similar claim to three cubic feet per second arising in the lower main Burlington ditch, and from that time on has made open claim to ownership of these seep waters and apparently obtained and used them until shortly before the bringing of this action, when such use was prevented by the officers of defendant company. The method of use when the ditch was otherwise empty was by closing the headgate of the Brighton lateral, as a result of which the water accumulated and backed up in the lower end of the ditch until it reached the level of the Schluter lateral when it was taken by plaintiff and conveyed down that lateral to his own farm lands. Whenever decreed river water was about to be run through the lower end of the ditch, measurement would be taken of the amount of seep then running from the segment and from the main ditch, and the amount so determined was claimed and generally obtained by plaintiffs. Such measurement at best was very inaccurate both from the fact that there might be "slop over" water mingled with the seep and from the further fact that the amount of seepage decreased very rapidly as water was being run from the lake so that the amount measured prior to running sections in the lower ditch might be very greatly in excess of the seepage available before the lower ditch runs were

completed. This practice continued from 1928 to 1944 when it was prevented by defendant, and plaintiffs brought this action, alleging use of the seep water since 1919; the filing thereon in 1928 and 1930; that the water is not tributary to any natural stream; and twenty years' beneficial use and prescriptive right thereby. Defendant answered making general denial and asking that plaintiffs be enjoined from interference with its ditch.

Following trial of the issues the court found that the seep water was tributary to a public stream and not subject to independent appropriation; that plaintiffs had failed to sustain the burden of proof as to prescriptive right; that neither party was entitled to a decree quieting title; that plaintiffs had not acquired any right for storage or transportation of water in defendant's ditch other than their proportionate share as stockholders, and that neither party had made sufficient showing to be entitled to injunctive relief. Accordingly judgment of dismissal was rendered.

The points specified by plaintiffs as grounds for reversal and argued in their briefs may be summarized under three contentions:

1. That the court erred in holding that the seep waters are tributary to a natural stream when in fact they are not so tributary but are subject to appropriation under our statute providing for appropriation of seepage and waste water and plaintiffs' acquired prior right by virtue of filing maps and statements and beneficial use thereunder. As to this contention plaintiffs pleaded, and defendant in its answer admitted, that these seep waters were not tributary to a natural stream. However, there was substantial evidence introduced by both parties tending to establish that it was so tributary and the evidence received without objection, rather than the pleading, properly determined the finding of the court. Plaintiff largely bases his claim upon his maps and statements filed as aforesaid, in each of which it is recited that the source of supply is, "seepage which is

tributary to the South Platte river and from which it derives its supply of water." The engineer who prepared the claim statement and who for many years had been employed by the Farmers Reservoir and Irrigation Company and was necessarily familiar with conditions, testified as witness for plaintiff that this seep water is tributary to the river. It is undisputed that in the winter when the seepage is not used it backs up in the ditch to its intersection with Third Creek whence it is spilled into that creek and carried to the river, and the only evidence even conjecturally to the contrary was that of plaintiff William Schluter who testified: "Well, I don't know if it would reach the Platte river. I suppose they could take it but it never does, that is all I know. That has been tried out time and again. There ain't enough of it." In view of the presumption that water is tributary to a stream, the court properly could have made no other finding. Plaintiffs rely upon their filing of maps and statements in the office of the state engineer, and the failure of the ditch company to make such filing. As we have said, "Water rights are not based on the filings of maps or statements. Such filings do not constitute appropriations nor lack thereof invalidate them." *DeHaas v. Benesch,* 116 Colo. 344, 181 P. (2d) 453. The statute provides for filing of map and statement within sixty days from commencement. Therefore, plaintiffs' filings in 1928 and 1930 would not be even prima facie evidence of initiation of use in 1919 as claimed therein. Furthermore, the seepage water here claimed has continuously arisen in the ditch since the enlargement of Barr Lake in 1912. Its use by the stockholders generally from 1912 to 1919 is undisputed. Consequently defendant for its stockholders has prior claim to the waters as between the parties hereto. *Nicoloff v. Bloom Co.,* 100 Colo. 137, 66 P. (2d) 333. Ultimate priorities can only be determined in an adjudication proceeding.

■ 2. That the defendant repeatedly and formally recognized and acquiesed in plaintiffs' right to the water.

As to the seep water arising in the segment it is apparent from the minutes of the meetings of the defendant company that the stockholders and directors generally believed that plaintiffs had a valid right from the time of his filing in 1929 until the question was taken up with counsel shortly before the bringing of this action in 1944. However, counsel fails to suggest in what way title can be predicated on such recognition and acquiesence in plaintiffs' use. It is not the basis of estoppel, as plaintiffs expended no money or labor on the strength of it, were not mislead by it, and merely gained thereby for several years the use of the water to which they had no right. It is not the basis of title by prescription under the twenty-year statute here pleaded, as the recognition and acquiesence began only in 1929 and this action was instituted in 1944. It is suggested in argument that the recognition was "for a valuable consideration." However, Schluter specifically disclaimed any contract, and the evidence fails to disclose any contractual right.

3. That plaintiffs established adverse user for a period of more than twenty years prior to the commencement of the action. Plaintiff William Schluter testified to use of this seep water since 1919 but this use was, until his filing in 1928, permissive and under no claim of right. He testified that the ditch superintendent said he would give him some water to irrigate his garden and he had had that water ever since. There was substantial testimony as to use of this water by other stockholders. Plaintiff William Schluter admitted such use particularly prior to the date of the filing of this claim. During all the period from 1919 to 1943, except for the years 1933 and 1934, plaintiff William Schluter was a member of the board of directors of the ditch company chosen to represent the stockholders taking water from that portion of the ditch. During much of the time he was vice-president. Whether one in such a fiduciary capacity could under any circumstances acquire title as against other stockholders we need not here determine. It is

sufficient to say that it could not be based on permissive origin and disputed use as here shown. *Needlerock Ditch Co. v. Ankenman,* 108 Colo. 443, 120 P. (2d) 187.

■ ■ There is ample evidence to support the finding of the trial court that plaintiffs had failed to sustain the burden of proof as to prescriptive right. Plaintiffs having failed to establish any claim to the water in question are not entitled to injunctive relief, and no abuse of discretion appears in denying injunctive relief to defendants.

Other points raised we believe do not require consideration.

Accordingly, the judgment is affirmed.

MR. JUSTICE HILLIARD dissents.