### Nos. 28464, 28465, 28466 and 28467

**The Town of De Beque v. Lee R. Enewold, Division Engineer of Water Division No. 5, State of Colorado; The Colorado River Water Conservation District, The Middle Park Water Conservancy District, The City of Aspen, The Board of Commissioners of the County of Pitkin, The Basalt Water Conservancy District, The West Divide Water Conservancy District, and The Bluestone Water Conservancy District v. Northern Colorado Water Conservancy District and Municipal Subdistrict, Northern Colorado Water Conservancy District, City and County of Denver, acting by and through its Board of Water Commissioners, Vidler Tunnel Water Co., The United States of America, and Lee R. Enewold, Division Engineer of Water Division No. 5, State of Colorado**

(606 P.2d 48)

Decided January 21, 1980.                    Rehearing denied February 25, 1980.

Holland & Hart, John U. Carlson, Robert M. Pomeroy, Jr., for the Town of De Beque, Colorado River Water Conservation District, The Basalt Water Conservancy District, the West Divide Water Conservancy District, and the Bluestone Water Conservancy District.

Baker and Cazier, Stanley W. Cazier, for The Middle Park Water Conservancy District.

Musick, Williamson, Schwartz, Leavenworth & Cope, P.C., Loyal E. Leavenworth, for the City of Aspen and The Board of Commissioners of the County of Pitkin.

Davis, Graham & Stubbs, John M. Sayre, Robert V. Trout, for Northern Colorado Water Conservancy District and Municipal Subdistrict and Northern Colorado Water Conservancy District.

Wayne D. Williams, Michael L. Walker, for City and County of Denver.

Holme, Roberts & Owen, Glenn E. Porzak, Michael F. Browning, for Vidler Tunnel Water Co.

Joseph F. Dolan, United States Attorney, Hank Meshorer, Trial Attorney, for the United States of America.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

This case consolidated, on appeal, four conditional water right diligence applications originally filed in Water Division No. 5: Case No. W-2118-77, the diligence application of the Town of De Beque (De Beque), and Case Nos. W-44, W-789, and W-789-76, which are the successive diligence applications in 1970, 1972, and 1976 of the Colorado River Water Conservation District (River District).

After separate hearings, the trial court entered its orders on September 15, 1978, cancelling the conditional water rights of De Beque and the River District on the ground that both had failed to file their diligence applications within the statutory time period. We affirm.

I.

The facts in these cases were not in dispute and can be briefly stated.

De Beque is the holder of a conditional water right decreed in 1959 with an appropriation date of 1952. No application for a periodic finding of reasonable diligence was made until 1977. In 1978, the water referee granted the application for a quadrennial finding of reasonable diligence in the development of the proposed appropriation. Upon reviewing the ruling of the referee, the trial court entered an order requiring De Beque to show cause why its conditional water right should not be cancelled for failure to timely file its application. After a hearing, the trial court entered an order cancelling the conditional water right on the ground that De Beque had failed to file its application within the time prescribed by section 37-92-301(4), C.R.S. 1973.

The River District's conditional water rights present a more complex situation. The first of these rights was decreed for the Azure Power Plant in 1962, with an appropriation date of 1958. The Azure Power Plant was a part of the Gore Project.

In 1970, the River District, in Case No. W-44, filed an application for findings of reasonable diligence as to a number of conditional water rights relating to the Gore Project, but inadvertently omitted the Azure Power Plant right. As a result, the findings and decree of May 1972 did not include the Azure Power Plant conditional water right.

In 1972, in Case No. W-789, the River District filed an application for findings of reasonable diligence as to approximately seventy-five conditional water rights in connection with fourteen separate projects, including those previously considered in Case No. W-44. At the time of this filing, the River District not only failed to include the Azure Power Plant right, but also failed to include two conditional water rights known as the Una Power Conduit, decreed in 1970, and the Pabst Power Conduit, decreed in 1971. These latter two conditional water rights were a part of the River District's Bluestone and Snowmass projects. The diligence findings and decree of March 1975 did not include the Azure Power Plant, the Una Power Conduit, and the Pabst Power Conduit.

In July 1975, after discovery of the omission of the Azure Power Plant conditional water right, the River District sought to amend the findings and decree in Case No. W-789. The request was denied in January 1977 on the grounds of lack of jurisdiction to consider water rights not listed in the application and failure to satisfy the public notice requirement for a finding of diligence as to the Azure Power Plant right.

In May 1976, the River District, in Case No. W-789-76, filed its required quadrennial application for a finding of diligence and included the previously omitted Azure Power Plant right, but once again failed to include the Una and Pabst conditional water rights. As to this application, Northern Colorado Water Conservancy District (Northern) and Vidler Tunnel Water Company (Vidler) filed statements of opposition, a motion for a declaration of abandonment and cancellation of the Azure Power Plant right, and a motion for partial summary judgment. These two motions raised substantially similar issues and were considered together as motions for summary judgment by the trial court.

In the spring of 1978, having discovered the omission of the Una and Pabst Power Conduit rights from the diligence applications in W-789 and W-789-76, the River District filed a motion to amend the pending diligence application to include the two missing conditional water rights in W-789-76 and a petition to correct clerical errors with respect to the Azure, Una, and Pabst conditional water rights in Case Nos. W-44 and W-789. Northern and Vidler filed statements of opposition to the motion and petition and requested a declaration of abandonment and cancellation of the Una and Pabst Power Conduit rights.

In September 1978, the trial court denied the River District's petition to correct clerical omissions. It granted the summary judgment motion of Northern and Vidler on the grounds that failure to file diligence

applications within the time permitted by the statute terminated those rights, even assuming that reasonable diligence had been exercised in developing the conditional water rights. Section 37-92-301(4), C.R.S. 1973.

The issues raised in this appeal by the River District and De Beque are:

1. Whether, under the Water Right Determination and Administration Act of 1969, section 37-92-101 *et seq.*, C.R.S. 1973, failure to timely file an application for reasonable diligence mandates cancellation of a conditional water right absent any evidence that the holder of the conditional water right was prevented from filing by reason of conditions beyond his control.

2. Whether the inadvertent omission of certain conditional water rights in filing an application for reasonable diligence may constitute a correctible clerical error.

3. Whether the entry of summary judgment was proper.

## II.

At the outset, it should be noted that the River District failed to file for or obtain required diligence findings for the Azure Power Plant in 1970 and 1972 and for the Una and Pabst Power Conduits in 1972 and 1976 because its counsel and staff inadvertently failed to include those conditional water rights in the respective applications. As to De Beque, its officials were unaware, until 1977, of the requirement that diligence findings be obtained.

Further, the allegations of the River District and De Beque that they had in fact been diligent in the development of the conditional water rights at issue were accepted as true, for the purposes of these proceedings, by Northern, Vidler, and the trial court.

Having established the reason for the failure to include the conditional water rights in diligence applications and having accepted De Beque's and the River District's statements that they had in fact exercised due diligence in the development of the proposed appropriations, the question to be decided is what consequences should attach to a failure to obtain reasonable diligence findings at the times required by section 301(4) of the Water Right Determination and Administration Act of 1969 (1969 Act).

## III.

Prior to the adoption of the 1969 Act, the legislative scheme permitted showings of reasonable diligence as to conditional decrees to be made every two years. C.R.S. 1963, 148-10-8(4). In the event that the appropriator failed to make such a showing, the conditional decree could be cancelled if the appropriator failed to respond within six months to an order of court "directing him to show cause why such conditional decree should not be cancelled."

The permissive nature of this statute resulted in holders of conditional decrees not filing applications for findings of diligence and, in effect, allowing holders of conditional decrees to hold their decrees until other appropriators might initiate proceedings to place the decrees in issue. *See Colorado River Water Conservation District v. Twin Lakes Reservoir and Canal Co.*, 171 Colo. 561, 468 P.2d 853 (1970).

In the 1969 Act, the legislature mandated that holders of conditional water rights would be required to obtain findings of reasonable diligence every two years (amended in 1973 to every four years) or lose their rights.

Section 37-92-301(4), C.R.S. 1973, provides that:

"In every fourth calendar year after the calendar year in which a determination is made with respect to a conditional water right, the owner or user thereof, if he desires to maintain the same, shall obtain a finding by the referee of reasonable diligence in the development of the proposed appropriation, or said conditional water right shall be considered abandoned . . . ."

The trial court in interpreting section 301(4) concluded that:

"The language of . . . [the] statute with respect to the effect of failure to file an application for a finding of reasonable diligence within the prescribed time is clear and unequivocal: '. . . said conditional water right shall be considered abandoned.' C.R.S. (1973) 37-92-301(4).

"Taken together with the definition of abandonment of a conditional water right as found in C.R.S. (1973) 37-92-103, it is equally clear that an abandoned right is terminated. The intent of the legislature is clearly expressed: there is no room for interpretation. The statute must be held to mean what it clearly says . . . . Cancellation of the conditional right is the appropriate remedy."

The River District and De Beque contend that the trial court's rationale converts section 301(4) into a forfeiture statute and that, while permitting abandonment, Colorado law has never countenanced a water rights forfeiture rule. In support of this argument, they submit that the words "considered abandoned" in section 301(4) cannot be and should not be interpreted as meaning cancelled or forfeited, but should be interpreted to require proof, in an evidentiary hearing, of facts which conclusively demonstrate an intent to abandon water rights. In addition, they argue that the legislature, in adopting the 1969 Act, along with the 1971 and 1975 amendments to section 37-92-601, C.R.S. 1973, endorsed the intent concept as to abandonment and recognized the viability of conditional water rights for which no diligence filings had been made.

The use of the phrase "considered abandoned" in section 301(4) cannot be considered in a vacuum but must be viewed alongside the statutory definitions of "abandonment of a conditional water right" and "abandonment of a water right" in section 37-92-103(1) and (2), C.R.S. 1973. The former is defined as meaning "the termination of a conditional water

right as a result of the failure to develop with reasonable diligence the proposed appropriation upon which such water right is to be based." The latter is defined as "the termination of a water right in whole or in part as a result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder."

The legislature clearly intended different tests to be applied in determining when a conditional water right is abandoned and when an absolute water right is abandoned. The difference is the element of intent, which must be shown before an abandonment of an absolute water right can be decreed, but which is not necessary in establishing the abandonment of a conditional water right. The test applicable to determining whether a conditional water right has been abandoned is whether there has been a "failure to develop with reasonable diligence."

In considering section 301(4) in juxtaposition with section 103(1), it is evident that the legislature was drawing a clear connecting line between "failure to develop with reasonable diligence" and the requirement that the owner or user of a conditional water right obtain a finding of reasonable diligence.

In effect, the General Assembly equated a failure to obtain a finding of reasonable diligence with a failure to develop with reasonable diligence. While the result of this analysis of the pertinent legislative provisions may be, in the words of the River District and De Beque, draconian and harsh, it is for the General Assembly and not the courts to remedy the situation as was done in 1975.[1]

The 1971 amendment,[2] referred to by the River District and De Beque, amended section 601 to extend the time for initial showings of diligence as to existing conditional water right decrees from 1970 to 1972 and added a tolling provision.[3]

The River District and De Beque argue that, by extending the time for filing applications for diligence findings in 1971, the legislature demonstrated that it did not intend that conditional water rights would be lost because of failure to timely file.

Section 301(4) can be considered as a statute of limitations and, as such, can be applied to existing rights so long as a reasonable period of time is provided for exercise or protection of those rights. *See Oberst v. Mays,* 148 Colo. 285, 365 P.2d 902 (1961). The 1969 Act originally re-

[1] Section 37-92-305(7), C.R.S. 1973 (1978 Supp.):
"Prior to the cancellation or expiration of a conditional water right granted pursuant to a conditional decree, the court wherein such decree was granted shall give notice . . . to all persons to whom such conditional right was granted . . . ."
[2] Colo. Sess. Laws 1971, ch. 377, 148-21-44 at 1339.
[3] Neither the River District nor De Beque argues that they were prevented from filing the required applications for findings of reasonable diligence by conditions beyond their control. Thus, the tolling provision is not applicable and merits no further discussion.

quired that the application for a diligence finding be filed in 1970, one year after the passage of the act. Recognizing that failure to comply with this filing date could result in serious consequences, *i.e.*, the conditional water right would be considered abandoned, the General Assembly exercised its power to extend the filing date, thereby giving the holders of conditional water rights the opportunity to protect their interests. This act on the part of the legislature did not, in our view, demonstrate any legislative intent to weaken the effect of section 301(4). To the contrary, it demonstrated a legislative recognition of the effect of failure to file and obtain diligence findings in a timely manner.

The 1975 amendment, adding section 305(7) to the 1969 Act, required notice prior to cancellation or expiration of a conditional water right and again demonstrates the legislative recognition of the serious consequences that would befall the owner or user of a conditional water right who failed to obtain a diligence finding. De Beque's and the River District's argument that section 305(7) is meaningless, if, at the time of its enactment, a conditional water rights holder had no right to an evidentiary hearing prior to any judicial cancellation of such right, is not without merit under a different factual situation.

As previously noted, however, the River District and De Beque failed to file their diligence applications in 1972. The notice provision of section 305(7) is not applicable to this case, since it was adopted after the time periods set out in sections 301(4) and 601 had already expired and cannot be applied retroactively to revive a conditional water right considered abandoned in 1972.

There can be little doubt that the legislature "had the power to provide reasonable means for determining rights to the use of water, and to require all persons claiming such rights to present them in a prescribed manner, within a prescribed period, and to provide that all such claims not thus presented should be barred." *The Fort Lyon Canal Company v. The Arkansas Valley Sugar Beet and Irrigated Land Company,* 39 Colo. 332, 338, 90 P. 1023, 1025 (1907).

More recently, in *Kuiper v. Warren,* 195 Colo. 541, 580 P.2d 32 (1978), we recognized that the holder of a conditional permit to construct a well in a designated ground water basin who failed to file his statement of beneficial use within the time required by the statute lost his right to divert.

The River District and De Beque claim that they are entitled to their conditional water rights because they have proceeded with due diligence, regardless of their failure to comply with the provisions of the 1969 Act. We reject that contention and hold that the owner or user of a conditional decree must comply with sections 301(4) and 601 and that the failure to do so results in the loss of his conditional water rights.

## IV.

■ We turn now to the issue of whether inadvertent omission of a conditional water right from an application for a finding of reasonable diligence under section 301(4) of the 1969 Act, and the consequent omission of the conditional right from the trial court's findings based on that application, constitute correctible clerical error. We affirm the trial court in its determination that that the omission of the Azure Power Plant, Una Power Conduit, and Pabst Power Conduit conditional rights from the findings in Case Nos. W-44 and W-789 did not constitute such correctible error.

■ The correction of clerical errors in such findings is governed by section 37-92-304(10), C.R.S. 1973, which provides, in pertinent part, that "[c]lerical mistakes in said judgment and decree may be corrected by the water judge on his own initiative or on the petition of any person . . . ." The River District seeks to characterize the omission of the three conditional rights in question from the findings in Case Nos. W-44 and W-789 as "clerical mistakes" within the meaning of section 304(10).

It was established in *Bessemer Irrigating Company v. West Pueblo Ditch and Reservoir Company,* 65 Colo. 258, 176 P. 302 (1918), that the rule of law allowing correction of clerical errors in trial court findings and judgments encompasses:
"not only errors made by the clerk in entering the judgment, but also those mistakes apparent on the face of the record, whether made by the court or counsel during the progress of the case, which cannot reasonably be attributed to the exercise of judicial consideration or discretion." 65 Colo. at 259, 176 P. at 303.
The rule is designed to enable the trial court to amend its judgments "to speak the truth and show the judgment of the court which was actually pronounced." *Id.,* 65 Colo. at 263, 176 P. at 304. *Accord, Telluride Company v. Division Engineer in and for Water Division No. 4,* 195 Colo. 143, 575 P.2d 1297 (1978); *Base Line Land and Reservoir Company v. Boulder and Weld Reservoir Company,* 116 Colo. 548, 182 P.2d 898 (1947). In *Telluride, supra,* we held that the clerical error rule, as applied through section 37-92-304(10), C.R.S. 1973, mandated the amendment of a water referee's ruling with respect to certain conditional water rights, when, through inadvertence, the ruling omitted three conditional rights which were properly before the referee for his consideration and which the referee had intended to include within the purview of his ruling.

■ In the case before us, however, the Azure Power Plant, Una Power Conduit, and Pabst Power Conduit conditional water rights were never properly before the trial court in Case Nos. W-44 and W-789, by virtue of the fact that the applications filed by the River District in those cases did not mention the three conditional rights. This case does not

present the problem of a conditional water right included, but incorrectly described, in an application for a finding of reasonable diligence under section 301(4) of the 1969 Act. Nor does this case concern the omission from a trial court's findings of a conditional water right properly included in an application under section 301(4). The trial court correctly ruled that it was limited to consideration of the conditional rights and related issues actually presented by the applications in Case Nos. W-44 and W-789, and that "[t]o characterize as 'clerical error' the omission from a decree of a finding of reasonable diligence with respect to a conditional water right never mentioned in the application and never considered by the Court would be to expand the definition of clerical error beyond the bounds of precedent and of reason."

## V.

The River District agrees that the trial court correctly treated Northern's and Vidler's motions together as a motion for summary judgment, subject to the provisions of C.R.C.P. 56. *See Bunger v. Uncompahgre Valley Water Users Association,* 192 Colo. 159, 557 P.2d 389 (1976). Under C.R.C.P. 56(c), summary judgment is appropriate only when there exists no "genuine issues as to any material fact."

As noted in Part III of this opinion, *supra,* section 301(4) of the 1969 Act can be considered as a statute of limitations for obtaining findings of reasonable diligence with respect to conditional water rights. Pursuant to our construction of section 301(4), as it applies specifically to the conditional water rights involved in this case, the only issue germane to Vidler's and Northern's summary judgment motion was whether the River District had or had not complied with section 301(4)'s filing requirements as thus construed; *i.e.,* were the Azure Power Plant, Una Power Conduit, and Pabst Power Conduit conditional rights included in the appropriate applications for findings of reasonable diligence actually filed by the district in Case Nos. W-44 and W-789.

The undisputed facts before the trial court showed that the River District failed to meet these requirements. The allegation of the River District that its failure to meet the filing requirements was the result of inadvertence, as well as the allegation that it had in fact been diligent in the development of the conditional water rights at issue, accepted by the trial court as true, were simply not germane to the issues before the trial court on the motion for summary judgment. Therefore, the trial court did not err in granting the motion for summary judgment. *Norton v. Dartmouth Skis, Inc.,* 147 Colo. 436, 364 P.2d 866 (1961); *Kanarado Mining and Development Company v. Sutton,* 36 Colo. App. 375, 539 P.2d 1325 (1975); *Valenzuela v. Mercy Hospital,* 34 Colo. App. 5, 521 P.2d 1287 (1974).

The judgment is affirmed.

JUSTICE LOHR does not participate.