CITY AND COUNTY OF DENVER, Acting By and Through Its BOARD OF WATER COMMISSIONERS, Petitioner–Appellant,

v.

VAIL VALLEY CONSOLIDATED WATER DISTRICT; Mobil Oil Corporation; Colorado River Water Conservation District, Objectors–Appellees,

and

Upper Eagle Regional Water Authority, Intervenor–Appellee.

No. 85SA428.

Supreme Court of Colorado, En Banc.

Feb. 22, 1988.

Wayne D. Williams, Michael L. Walker, Henry C. Teigen, Casey S. Funk, Anne R.

Avery, Mary B. Moore, Denver, for petitioner-appellant.

Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, T. Shaun Sullivan, Denver, for objector-appellee Vail Valley Consol. Water Dist.

Delaney & Balcomb, Scott Balcomb, Glenwood Springs, for objector-appellee Mobil Oil Corp. and intervenor-appellee Upper Eagle Regional Water Authority.

Donald H. Hamburg, Glenwood Springs, for objector-appellee Colorado River Water Conservation Dist.

ROVIRA, Justice.

Middle Creek flows south into Gore Creek, which in turn flows west into the Eagle River near Vail, Colorado. This case involves a dispute between the Board of Water Commissioners of the City and County of Denver ("Denver") and the Vail Valley Consolidated Water District ("Vail Valley")[1] over rights to water from Middle Creek. The water court ruled against Denver. We affirm.

### I.

In 1957, Denver commenced an adjudication suit under the Adjudication Act of 1943, §§ 147-9-1 to -25, 1953 C.R.S.,[2] to secure a conditional right to divert water from Gore Creek and several of its tributaries through its proposed Eagle River Unit of the Roberts Tunnel Collection System. At the time of the application, the Adjudication Act included the following provision:

> **Statement of claim in adjudication suits.**—No owner or claimant of any water right may introduce evidence concerning the same in any adjudication suit until there shall have been first filed in said suit a statement of claim duly signed and verified by or on behalf of one or more owners or claimants of such

water right, and which statement of claim shall contain:

> . . . . .

> (3) A general physical description of such ditch, reservoir or other structure, with the present and proposed capacity in second feet of any ditch or other structure for diverting water, and the present and proposed capacity in acre-feet of any reservoir or other structure for storing water;

> (4) The name of the stream or other source of supply with the location of the point of diversion and the location of any storage works;

> . . . . .

> (8) A statement of any filings made in the office of the state engineer.

> . . . . .

§ 147-9-8, 1953 C.R.S.

In its statement of claim, Denver described the project for which water was sought as follows:

> 5. Those parts of the Roberts Tunnel Collection System which are located in Water District No. 37 are described as follows:

> (a) A series of conduits and tunnels extending from Red Sandstone Creek, southward across intervening drainage and streams, including ~~Meadow Creek~~, Spraddle Creek, Booth Creek, Pitkin Creek, Bighorn Creek, Gore Creek, Black Gore Creek, Turkey Creek, Wearyman Creek, Resolution Creek, Lime Creek, East Fork of the Eagle River, Piney Creek, Yodar Gulch, French Creek, Lost Creek, Middle Fork, Missouri Creek, and Homestake Creek, none of which structures has been constructed at the time of the filing of this statement of claim, but which, when completed, will control the waters of said streams together with intervening tributary drainage, a total of 1195 cubic feet of water per second of time.

---

1. Mobil Oil Corporation, Colorado River Water Conservation District, and Upper Eagle Regional Water Authority all filed statements of opposition to Denver's claim. For convenience, we will refer to all appellees as "Vail Valley."

2. Denver filed the statement of claim at issue under the Adjudication Act of 1943, which was repealed in 1969. Ch. 373, sec. 20, 1969 Colo. Sess. Laws 1200, 1223.

The structures for the diversion of said water will consist of diversion dams, canals, tunnels, siphons and other water carrying devices. (Strike-through in original.)

The statement then described the sources of water sought to be appropriated as follows:

6. The source of supply of water for the Roberts Tunnel Collection System in Water District No. 37 is the streams and tributary drainage at and above the collection structures, the approximate location of which is the intersection of the streams hereinabove mentioned and tributary drainage between them lying at or slightly above elevation 9,284 feet above sea level....

Finally, the statement noted that:

9. Filings for the Roberts Tunnel Collection System have been made in the office of the State Engineer and were accepted by the State Engineer on or about January 24, 1957, having been first lodged with the State Engineer for filing on December 28, 1956.

On July 31, 1964, the water court entered an amended and supplemental decree (the "Denver Decree") *nunc pro tunc* June 8, 1962, which decreed, among other rights, the following: [3]

ROBERTS TUNNEL COLLECTION SYSTEM

That the Roberts Tunnel Collection System is hereby awarded conditional priority No. 548 and that there be allowed to flow into said system for all municipal uses ... an amount of water up to but not exceeding 1195 cubic feet per second of time as of November 7, 1956, out of the waters of Red Sandstone Creek, Spraddle Creek, Booth Creek, Pitkin Creek, Big Horn Creek, Gore Creek, Black Gore Creek, Turkey Creek, Wearyman Creek, Resolution Creek, Lime Creek, East Fork of the Eagle River, Piney Creek, Yodar Gulch, French Creek, Lost Creek, Middle Fork, Missouri Creek and Homestake Creek, together with natural drainage intervening between said creeks lying at or above elevation 9,284 feet above sea level....

On February 11, 1985, Denver filed a Petition for Correction of Clerical Error under section 37–92–304(10), 15 C.R.S. (1973), which provides that "[c]lerical mistakes in [a] judgment and decree may be corrected by the water judge on his own initiative or on the petition of any person...." [4] The petition sought to have the Denver Decree corrected by inserting Middle Creek as a specifically named source of water for Denver's project. Vail Valley entered a statement of opposition to Denver's petition [5] and contended that, because

---

3. Denver's right to water for the Roberts Tunnel Collection System has twice been upheld by this court. *See People v. District Court,* 154 Colo. 84, 388 P.2d 403 (1964); *Metropolitan Suburban Water Users Ass'n v. Colorado River Water Conservation Dist.,* 148 Colo. 173, 365 P.2d 273 (1961).

4. That section provides, in full, that:
   Clerical mistakes in said judgment and decree may be corrected by the water judge on his own initiative or on the petition of any person, and substantive errors therein may be corrected by the water judge on the petition of any person whose rights have been adversely affected thereby and a showing satisfactory to the water judge that such person, due to mistake, inadvertence, or excusable neglect, failed to file a protest with the water clerk within the time specified in this section. Any petition referred to in the preceding sentence shall be filed with the water clerk within three years after the date of the entry of said judgment and decree. The water judge may order such notice of any such correction proceed-

ings as he determines to be appropriate. Any order of the water judge making such corrections shall be subject to appellate review as in other civil actions.
Vail Valley does not contend that Denver's action is barred by the three-year limitations period set out above, and we therefore need not address its applicability to this case.

5. Vail Valley's interest in this suit arises from its own plans to appropriate Middle Creek water. On December 14, 1981, Vail Valley's predecessors-in-interest brought an adjudication suit for a conditional water right, and named Middle Creek as one source of water in their statement of claim. Denver entered the Vail Valley adjudication as an objector, asserting that the Denver Decree gave Denver a superior right to Middle Creek water.
   On March 4, 1985, the water court in the Vail Valley case granted the Vail Valley petition for determination of a conditional right to Middle Creek water, but did not determine whether the Denver Decree gave Denver a superior right to

Middle Creek was not named as a source of water in Denver's statement of claim, the water court was without jurisdiction to "correct" the decree.

Although Denver's statement of claim did not specifically name Middle Creek as a source of water, Denver contended that the statement was sufficient to request Middle Creek water for two reasons. First, the preliminary map and statement filed with the state engineer clearly identified Middle Creek as a source of water and those filings were incorporated by law into the statement of claim. Second, the broad descriptive language utilized in the statement of claim identifying the sources of water encompassed Middle Creek as part of the "tributary drainage" of Gore Creek between Red Sandstone Creek and Spraddle Creek. In addition, Denver explained that it inadvertently failed to replace Meadow Creek with Middle Creek after the former was stricken from the statement of claim, or in the alternative, that Spraddle Creek was inadvertently named instead of Middle Creek.

The water court rejected Denver's arguments, and granted Vail Valley's motion to dismiss. The court found:

> Middle Creek was in fact not included ... in the statement of claim filed by the claimant, City and County of Denver. Although it was included in the ... map and statement filed in the State Engineer's Office on January 21, 1957, the map and statement was not incorporated by reference into the statement of claim and therefore is not a part of the statement of claim.

The failure of a decree to include a water right because of its non-inclusion in the statement of claim is not correctable as clerical error. The omitted water right was never properly before the court by virtue of the fact that the statement of claim did not describe the omitted water

right. The trial court was limited in its decree to those issues plead[ed] in the statement of claim. *Town of DeBeque v. Enewold*, 199 Colo. 110, 606 P.2d 48 [1980].

Denver appeals that order of dismissal.

## II.

### A.

Denver asserts first that the map and statement it filed with the state engineer and the county recorder were incorporated by reference into its statement of claim. Because the map and statement clearly indicate Middle Creek as a source of water, the statement of claim includes Middle Creek. Denver suggests, in essence, that reference to a map and statement filed with the state engineer may serve as a substitute for the specific identification of water sources required by section 147–9–8(4), 1953 C.R.S. We do not agree.

It is important to understand the purpose of filing a map and statement with the state engineer. Water users may foresee the need for water years in advance of the actual consumption of the water. Conditional water rights are intended to assure such users at present that water will be available when the need eventually arises. That assurance enables prospective users to plan projects without fear of finding, after the completion of their projects, that there is insufficient unappropriated water to meet their needs. *Metropolitan Suburban Water Users Ass'n v. Colorado River Water Conservation Dist.*, 148 Colo. 173, 192–95, 365 P.2d 273, 283–85 (1961).

■ A conditional water right may not, however, be based on a potential user's mere speculation that it eventually will find a need and appropriate water. *Rocky Mountain Power Co. v. Colorado River Water Conservation Dist.*, 646 P.2d 383, 387–89 (Colo.1982). Instead, such a right

Middle Creek water. Instead, the court's order included the following provision:

> The Court makes no ruling in this Case on the issue whether Denver is the owner or claimant of decreed rights in Middle Creek, tributary to Gore Creek. That issue shall be litigated and determined in Denver's Petition [to

Correct Clerical Error] pending under Case No. 85CW035. None of the parties shall be foreclosed by this judgment hereto and decree from fully litigating said issue in Case No. 85CW035, and no party waives any defenses or arguments which might be available to it in Case No. 85CW035.

requires that the appropriator represent identifiable future users and evidence an intent to appropriate water through "an overt manifestation of that intent through physical acts sufficient to constitute notice to third parties." *City of Aspen v. Colorado River Water Conservation Dist.*, 696 P.2d 758, 761 (Colo.1985); *Rocky Mountain Power Co.*, 646 P.2d at 384–90; *Colorado River Water Conservation Dist. v. City & County of Denver*, 642 P.2d 510, 512 (Colo.1982); *Colorado River Water Conservation Dist. v. Vidler Tunnel Water Co.*, 197 Colo. 413, 415–18, 594 P.2d 566, 566–69 (1979); *Colorado River Water Conservation Dist. v. Rocky Mountain Power Co.*, 174 Colo. 309, 317, 486 P.2d 438, 442 (1971).

At the time Denver filed its map and statement, the filing statute specifically provided that such filing was "prima facie evidence in any court having jurisdiction of the intent of the claimant to make such construction [as described therein] and to utilize such rights as are shown and described in the map and statement." § 147–4–6, 1953 C.R.S. Thus the filing gives notice to potential appropriators of water that some other party may be seeking recognition of rights to the same water through an adjudication suit.

The various claimants may then inspect the statements of claim on file before the water court to determine the particular sources on which claims are being made as provided by statute. *See Michel v. Front Range Land & Livestock Co.*, 200 Colo. 104, 106, 612 P.2d 1128, 1129 (1980) (filing of map and statement insufficient to perfect water right; such right can be determined only through adjudication); § 147–4–6, 1953 C.R.S. ("Nothing herein contained shall be so construed as to prevent a proper adjudication of rights in accordance with existing statutes governing such adjudication").

■ We have been careful to limit the importance given to the filing of a map and statement. For example, we have repeatedly rejected the contention that a claimant's failure to file a map and statement is fatal to his claim:

Water rights are not based on the filings of maps or statements. Such filings do not constitute appropriations nor lack thereof invalidate them. The statute providing that appropriators shall file [a] map and statement ... declares only that a map and statement so filed shall be prima facie evidence in any court of intent to appropriate.... The purpose and effect of filing must not be extended beyond the statute.

*DeHaas v. Benesch*, 116 Colo. 344, 351–52, 181 P.2d 453, 457 (1947). *Accord Black v. Taylor*, 128 Colo. 449, 457–58, 264 P.2d 502, 506–07 (1953); *Schluter v. Burlington Ditch, Reservoir & Land Company*, 117 Colo. 284, 289, 188 P.2d 253, 256 (1947).

Similarly, to hold that a map and statement filed with the state engineer are incorporated into a statement of claim, and may supplement the naming of water sources in the statement, would be to accord those filings a "purpose and effect" well beyond that envisioned by the statute. In addition, such a holding would accord little importance to the requirement that an applicant name the sources of water sought to be appropriated in its statement of claim. § 147–9–8(4), 1953 C.R.S. We therefore reject Denver's first argument.

### B.

Denver further argues that the language of its statement of claim is adequate to identify Middle Creek as a proposed source of water, and that the water court erred in dismissing the petition without taking evidence to assist it in properly interpreting the statement of claim and the subsequent decree. Specifically, Denver contends that Middle Creek, which runs parallel to and between Red Sandstone and Spraddle Creeks, is part of the tributary drainage of Gore Creek and thus is described in the statement of claim as "tributary drainage lying between" the specifically named creeks.

■ The language upon which Denver relies cannot reasonably be interpreted as including Middle Creek. On the face of the statement of claim, it appears that Denver

intended the list of sources to be as specific as possible. An ordinary person reading the statement of claim would be reasonable in assuming that, had Denver sought water from Middle Creek, it would have named Middle Creek as it did nineteen other sources. The phrase "tributary drainage lying between" the enumerated creeks clearly was intended to describe only the innumerable, unnamed streams and rivulets which eventually flow into the named creeks. An affidavit filed by an expert for Denver, for example, attests that the volume of Middle Creek's flow is more than ten times that of Spraddle Creek's. It would thus be quite unorthodox and, we think, unreasonable to rely on a description of Middle Creek as mere "intervening drainage" among such smaller creeks as Spraddle Creek.

We thus conclude that, inasmuch as the statement of claim and the Denver decree are clear and unambiguous, the water court did not err in failing to hold a hearing before dismissing Denver's petition. *See Meyring Livestock Co. v. Wamsley Cattle Co.,* 687 P.2d 955, 959 (Colo.1984) (petitioner must make out prima facie case of clerical error before water court's duty to hold hearing arises).

### C.

Finally, Denver's brief proffers "two possibilities of factual basis for the omission of Middle Creek from the Statement of Claim." First, Denver suggests, Middle Creek was supposed to have been substituted for Meadow Creek, which itself was stricken from the statement. In the alternative, Denver claims, Spraddle Creek was erroneously named in the statement instead of Middle Creek. Denver concludes that "[t]his demonstrates precisely why evidence should be presented" to interpret the Denver Decree. We disagree.

It is an important principle of Colorado water law that a water court may decree rights no more extensive than those sought in an applicant's statement of claim:

A water decree is a determination of a specific issue presented to the court in the specific manner prescribed by statute. The statement of claim presents the issue. The decree is limited by the issue it resolves.

*Orchard City Irrigation Dist. v. Whitten,* 146 Colo. 127, 135, 361 P.2d 130, 134 (1961). *Accord Danielson v. Jones,* 698 P.2d 240, 244 (Colo.1985); *United States v. City & County of Denver,* 656 P.2d 1, 35 (Colo. 1982); *Town of DeBeque v. Enewold,* 199 Colo. 110, 119–20, 606 P.2d 48, 54 (1980).

In *Town of DeBeque,* the holders of various conditional water rights applied to the water court for findings of reasonable diligence with respect to the development of those rights,[6] but failed to include in their applications several of the rights they held. They later petitioned the water court to correct the due diligence findings so as to include the omitted rights. We affirmed the water court's cancellation of the omitted rights, and agreed with the court that the omission could not be corrected as a clerical error under section 37–92–304(10):

The trial court correctly ruled that it was limited to consideration of the conditional rights and related issues actually presented by the applications ... and that '[t]o characterize as "clerical error" the omission from a decree of a finding of reasonable diligence with respect to a conditional water right never mentioned in the application and never considered by the Court would be to expand the definition of clerical error beyond the bounds of precedent and of reason.'

199 Colo. at 120, 606 P.2d at 54, quoting water court order.

■ In light of *DeBeque* and its progeny, it is clear that if the Denver Decree's omission of Middle Creek was due solely to Denver's failure to name Middle Creek as a source in its statement of claim, then that omission cannot be corrected as a clerical

---

6. In every fourth calendar year after the calendar year in which a determination is made with respect to a conditional water right, the owner or user thereof, if he desires to maintain the same, shall obtain a finding by the referee of reasonable diligence in the development of the proposed appropriation, or said conditional water right shall be considered abandoned.

§ 37–92–301(4), 15 C.R.S. (1973).

error. Thus neither of Denver's alternative explanations for the omission of Middle Creek from its statement of claim states a cognizable basis for relief.

Because Denver's statement of claim did not include Middle Creek as a source and because Denver's failure to include Middle Creek cannot be remedied as a clerical error, the water court's order dismissing Denver's petition was correct. Accordingly, the judgment of the water court is affirmed.