**DALLAS CREEK WATER COMPANY,**
**Appellant,**

v.

**Frank M. HUEY and Carol L. Huey; Samuel L. Ewing and Martha L. Ewing; Robert N. Neff and Hella H. Neff; Esther C. Lewis; Thomas P. Whelan and Marilyn P. Whelan; Louis V. Schlosser and Sue A. Schlosser; South Ridgeway Partnership; and Ken Knox, Division Engineer for Water Division No. 4, Appellees.**

**No. 96SA186.**

Supreme Court of Colorado,
En Banc.

March 10, 1997.

fendants.

Patrick & Stowell, P.C., a Professional Corporation, Kevin L. Patrick, Brian L. Stowell, Scott C. Miller, Aspen, for Appellant.

Caloia, Houpt & Light, P.C., Jefferson V. Houpt, Sherry A. Caloia, Glenwood Springs, for Appellees.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Jennifer L. Gimbel, Deputy Attorney General, Lee E. Miller, First Assistant Attorney General, Natural Resources Section, Denver, for State Engineer and Division Engineer, Water Division No. 4.

Justice HOBBS delivered the Opinion of the Court.

This appeal is from an order of the Water Court for Water Division No. 4 cancelling a conditional water right for purported failure of the owner or user thereof to file timely an application for a finding of reasonable diligence. Although the application was filed by the water user's agent prior to expiration of the applicable diligence period, the application named only a predecessor in interest, a defunct Colorado corporation, as the applicant. The user of the water right sought to proceed with the application, but the water

court refused to allow a formal party substitution for this purpose. The water court ordered dismissal of the application on the basis that it lacked subject matter jurisdiction because the application failed to include the present owner or user of the water right as an applicant prior to the filing deadline.

We conclude, however, that subject matter jurisdiction was vested in the water court by the combination of the timely filing of the application and publication of the resume notice. Both the contents of the application and the resume notice disclosed that Dallas Creek Water Company (Dallas Creek Company) was the user of the water right. Since Dallas Creek Company appeared promptly in the proceedings, through counsel, for the purpose of pursuing an application which was timely filed by its agent, and counsel was permitted to participate in motion and discovery practice, we conclude that the water court erred when it ruled that it was without jurisdiction and refused to allow Dallas Creek Company to be substituted formally as the real party in interest to the application. Accordingly, we reverse the order of dismissal and remand for further proceedings regarding the diligence application.

I.

On April 25, 1974, a conditional decree for 10 cubic feet per second (c.f.s.) of water was entered for the Log Hill Pumping Plant at a specified point of diversion on Dallas Creek, a tributary to the Uncompahgre River in Ouray County, Colorado. The water was to be used "on Log Hill Mesa and immediately adjacent areas for municipal purposes, which include industrial, residential, commercial, recreational and fish culture purposes." *In re Water Rights of Wright*, No. W–1365 (Water Division No. 4, filed Apr. 25, 1974). The original appropriator envisioned development of 7,000 acres of land for residential, commercial, industrial, and recreational use involving 40,000 new residents.

The conditional water right application was filed and the decree obtained by William R. Wright. The subsequent ownership of the water right is disputed by those who have maintained statements of opposition (Objectors). Nevertheless, it is undisputed that Wright, Raymund F. Kolowich, and Robert F. Draper incorporated WRIKO, INC., as a Colorado corporation on February 22, 1972, and that WRIKO successfully pursued subsequent reasonable diligence applications which kept the conditional water right in effect. On April 27, 1987, WRIKO obtained a water court decree which determined that a portion of the Log Hill Pumping Plant conditional right had been made absolute and that 9.38 c.f.s. should remain in effect as a conditional water right.[1]

On March 15, 1993, the water clerk for Water Division No. 4 notified Raymund Kolowich that the conditional decree "filed by Wriko, Inc. as applicant, WILL BE DUE FOR DILIGENCE FILING IN MAY, 1993."[2] On March 30, 1993, "JAMES A. WILLEY, AGENT" filed an application for a finding of reasonable diligence in the name of WRIKO, INC., seeking to keep in effect the conditional water right. Willey was, in fact,

1. The application recites that .66 c.f.s. of the Log Hill Pumping Plant right was made absolute, whereas the 1987 decree recites that 9.38 c.f.s. of the right is continued as conditional, meaning that .62 c.f.s., not .66 c.f.s. was made absolute. On remand, the water court should ascertain the correct absolute and conditional amounts.

2. The water clerk's notice stated as follows:

March 15, 1993

Raymund Kolowich
91 South Port Royal Drive
Hilton Head, South Carolina 29928

YOUR CONDITIONAL DECREE NO. 86CW143(Ref. W–1365 and 82CW183) filed by Wriko, Inc. as applicant, WILL BE DUE FOR DILIGENCE FILING IN May, 1993. If you intend to keep said Conditional Decree in force by showing due diligence or to have it made absolute, you must file an Application to that effect with the Court.

If said application is not received, the Conditional Decree will be presumed to be abandoned and will be canceled by Court Order without further notice to you.

If you believe that you have already properly filed an application concerning this Conditional Decree, please contact us and advise, of the date of said filing.

This notice is given pursuant to CRS 1973, 37–92–305(7), as amended.

Sincerely,
Kay Phillips [original signed]
Water Clerk
Division No. 4

the agent for Dallas Creek Company, the user in possession of the water facility to which the conditional right was originally decreed.

The application refers to the user of the water right: "The applicant supplies water to the D.C.W.C. (Dallas Creek Water Company, Inc.) formerly Loghill Village Water Company and other properties." The application also describes Dallas Creek Company as the operator of existing water facilities which include the Loghill Village Pumping Plant. This is the structure to which the water court originally decreed the conditional water right in 1974 and, in 1987, decreed it to be partially absolute and partially conditional.

Notice of the reasonable diligence application was published in the July 1993 resume for Water Division No. 4. The resume notice clearly stated that a finding of reasonable diligence was being sought for the Loghill Village Pumping Plant, its source of water being Dallas Creek. The geographical location of the point of diversion was set forth, identifying the water right sought to be continued in effect as conditional. The resume, as did the application, recited that: "The Applicant supplies water to the D.C.W.C. (Dallas Creek Water Company, Inc.) formerly Loghill Village Water Company and other properties." Statements of opposition were due to be filed by the last day of August 1993.

In response to the resume, numerous statements of opposition were filed. Objectors are owners of land and water rights in the Dallas Creek basin. Throughout the proceeding here and in the water court, Objectors have asserted that: (1) neither WRIKO nor Dallas Creek Company is the owner of the water right; (2) Dallas Creek Company did not appear as a party in interest by means of a timely filed diligence application; (3) the owner of the water right has not appeared at any time in the diligence proceeding; and (4) Dallas Creek Company is not an appropriator for purposes of pursuing the conditional water right or these diligence proceedings.

Objectors also assert, as to the merits of the application, that Dallas Creek Company does not possess a plan, sufficient holdings of land or contractual arrangements, or the means to place the remaining portion of the conditional water right to beneficial use. Objectors seek cancellation of the remaining conditional portion of the Log Hill Pumping Plant water right, emphasizing that only .62 c.f.s. of the originally decreed 10 c.f.s. conditional right has been made absolute over the course of twenty-three years and that no additional amount had been put to beneficial use during the diligence period.

On September 3, 1993, Kevin L. Patrick, P.C. entered an appearance on behalf of Dallas Creek Company by means of a pleading captioned "CONCERNING THE APPLICATION FOR WATER RIGHTS OF: *DALLAS CREEK WATER COMPANY* and WRIKO, INC., in Ouray County." (Emphasis added.) Thereafter, Patrick and his successor law firm, Patrick & Stowell, P.C., (the Patrick firm) pursued the application before the referee and the water court on behalf of the Dallas Creek Company as user of the water right, though a formal substitution of parties had not occurred. The Patrick firm answered discovery requests, responded to motions, and prepared for trial. It filed a formal motion for substitution of Dallas Creek Company as a real party in interest on January 16, 1996, shortly before the scheduled trial. The water court denied the motion as untimely and incapable of being granted because of a perceived jurisdictional defect in the application.

The case had been prepared actively for trial. Between September 3, 1993, and January 16, 1996, the Objectors propounded interrogatories which were answered by written responses and the production of documents. Through the responses and document production, the Patrick firm sought to show that Dallas Creek Company: (1) has a perpetual lease of the absolute and conditional portions of the Log Hill Pumping Plant from persons, corporations, and ventures who are the successors in interest to WRIKO; (2) together with co-venturers has invested approximately three million dollars during the diligence period in activities related to perfection of the water right; (3) together with co-venturers has land, contractual arrangements, and Ouray County land use approvals for develop-

ment plans and plats which depend on use of the water right; and (4) is in possession of operating facilities which depend on the absolute and conditional water right.

The merits of these contentions and the application have not been reached. Objectors moved to dismiss the diligence application because WRIKO, the named applicant, had been dissolved as a Colorado corporation on January 22, 1988, and no other party appeared as an applicant within the diligence period. Shortly before trial, the water court agreed that it lacked subject matter jurisdiction because the application "was not timely filed *by a real party in interest.*"

In its order denying the company's motion for reconsideration, the court expressed doubt that a deficiency in listing a real party in interest on a timely filed application can be cured by subsequent amendment to the application. The water court also entered a minute order denying, as untimely, the substitution of Dallas Creek Company as a real party in interest to the case.

Dallas Creek Company argues on appeal that subject matter jurisdiction vested in the water court with the filing of the application and that it is entitled as the user of the water right to proceed with the application as a real party in interest. We agree. We conclude *that the application and resume notice thereof provided sufficient inquiry notice regarding Dallas Creek Company's identity as user of the water right.* Because Dallas Creek Company appeared through its counsel in the case three days after the close of the opposition period and was allowed to participate in discovery and motion practice regarding the diligence application, we conclude that the court abused its discretion in denying formal substitution of Dallas Creek Company for WRIKO as the real party in interest to the diligence proceeding.

## II.

This case involves the water court's subject matter jurisdiction over conditional water appropriations and reasonable diligence determinations.

### A.

#### Conditional Appropriations

A water right comes into existence by applying state waters to beneficial use. *See Platte Water Co. v. Northern Colo. Irrigation Co.,* 12 Colo. 525, 531, 21 P. 711, 713 (1889). This has been Colorado law since territorial days. *See Yunker v. Nichols,* 1 Colo. 551, 570 (1872) (Wells, J., concurring). A water court decree adjudicating a right to waters of a natural stream "confirms the existence of that right which arose initially by application of water to beneficial use." *Bayou Land Co. v. Talley,* 924 P.2d 136, 149 (Colo.1996). An absolute decree confirms that amount of depletion from the stream that can be taken in priority as a property right. *See People ex rel. Simpson v. Highland Irrigation Co.,* 917 P.2d 1242, 1248, 1249 (Colo.), *cert. denied,* —— U.S. ——, 117 S.Ct. 480, 136 L.Ed.2d 375 (1996).[3]

The law of conditional water rights and reasonable diligence arose out of the first general adjudications of irrigation rights under the Adjudication Acts of 1879 and 1881. Secs. 1–46, 1879 Sess. Laws 94, 94–108; Secs. 1–38, 1881 Sess. Laws 142, 142–60. At the onset of these adjudications, government surveys of sections and townships had not been completed. Settlers marked off their agricultural claims as best they could and estimated their present and future needs for irrigation water. "The result was that in many instances two or three times as much water was claimed and allotted as was needed to supply all reasonable present and prospective requirements; and in some cases priorities were recognized for more than the

---

**3.** An absolute decree entitles the subsequent operation of the right in the amount of its decreed quantity, so long as the water is applied beneficially. *See Board of County Comm'rs v. Upper Gunnison River Water Conservancy Dist.,* 838 P.2d 840, 847, 849–50 (Colo.1992). River conditions vary from year to year, as does the need of the appropriator for the water. Over an extend-

ed period of time, a pattern of historic diversions and use under the decreed right will mature and become the measure of that right for change purposes. *See Board of County Comm'rs v. United States,* 891 P.2d 952, 969 (Colo.1995); *Weibert v. Rothe Bros.,* 200 Colo. 310, 318, 618 P.2d 1367, 1372 (1980).

entire flow of the natural stream." *Conley v. Dyer*, 43 Colo. 22, 24, 95 P. 304, 305 (1908).

In order to distinguish between perfected water rights and claims not yet realized, judges commenced to fashion decrees which (1) adjudicated rights which existed by reason of application of water to beneficial use, and (2) rendered interlocutory or "conditional" claims which had not ripened into water rights.[4] Interlocutory decrees were issued

contingent upon the exercise of diligence in constructing, extending or enlarging the ditch, as the case might be, and in applying the water therethrough; the requirement always annexed being that such construction or enlargement, application and use, should take place within a reasonable time from the date of commencement of the ditch or canal.

Id. at 24–25, 95 P. at 305.

■ This practice became codified. Statutory law now defines a "conditional water right" as "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), 15 C.R.S. (1990). *See City of Thornton v. City of Fort Collins*, 830 P.2d 915, 924 (Colo.1992) (a conditional decree recognizes that the first step towards an appropriation has been taken). Conditional decrees encourage the pursuit of projects designed to place waters of the state to beneficial uses by reserving an antedated priority, in light of the necessity to obtain and complete financing, engineering, and the construction of works that will capture, possess, or otherwise control the water. *See Public Serv. Co. v. Blue River Irrigation Co.*, 753 P.2d 737, 739 (Colo.1988) (*Blue River I*).

Because the development of water can be expensive and time-consuming, our legislature has implemented a system by which a prospective water user may reserve its place in line in the priority system by seeking a conditional decree, provided that the user demonstrates to the water court that the water can and will be put to beneficial use within a reasonable time. *Aspen Wilderness Workshop, Inc. v. Hines Highlands Ltd. Partnership*, 929 P.2d 718, 723 (Colo.1996). When the water is applied to beneficial use, the priority of the resulting water right is antedated. As explained in *Board of County Commissioners v. United States*, 891 P.2d 952, 964 (Colo.1995), the priority of a water right is a function of the calendar year in which the adjudicated application for conditional decree was filed in the water court and the appropriation date, which is the date on which the first step towards the appropriation was taken. *See City of Thornton v. City of Fort Collins*, 830 P.2d at 924–25; *United States v. Bell*, 724 P.2d 631, 641–42 (Colo.1986).[5]

■ Since conditional water rights function to reserve a priority date for an appropriation of water to beneficial use that has not been achieved yet, they are subject to continued scrutiny to prevent the hoarding of priorities "to the detriment of those seeking to apply the state's water beneficially." *Trans–County Water, Inc. v. Central Colo. Water Conservancy Dist.*, 727 P.2d 60, 65 (Colo.1986). "The doctrine of relation back is a legal fiction in derogation of the Constitution for the benefit of claimants under larger and more difficult projects and should be strictly construed." *City & County of Denver v. Northern Colo. Water Conservancy Dist.*, 130 Colo. 375, 393, 276 P.2d 992, 1001 (1954).

4. Colorado's experience with lawful "meadow appropriations," the construction of ditches to take meadow rights, and the effect of adjudication acts is recounted in *Broad Run Investment Co. v. Deuel & Snyder Improvement Co.*, 47 Colo. 573, 576–79, 108 P. 755, 756–58 (1910). *See* § 37–86–113, 15 C.R.S. (1990).

5. The *Bell* case explains that letting an adjudication opportunity pass can result in postponement of an otherwise senior water right to otherwise junior rights which are adjudicated:

Under Colorado law, vested appropriative water rights are subject to the postponement doctrine.... Priority of appropriation determines the relative priority among water rights or conditional water rights awarded in one calendar year, but, regardless of the date of appropriation, water rights or conditional water rights decreed in one year are necessarily junior to all priorities awarded in decrees in prior years.

724 P.2d at 641–42.

## B.

### Reasonable Diligence

■ Accordingly, a reasonable diligence proceeding tests whether the decreed conditional appropriation is being effectively pursued in a manner calculated to complete that appropriation. "In a diligence proceeding, the applicant must prove that it has the intent to use the water and has performed concrete actions demonstrating diligent efforts to finalize its appropriation." *Blue River I*, 753 P.2d at 741.

■ Statutory law defines the "measure of reasonable diligence" to be the "steady application of effort to complete the appropriation in a reasonably expedient and efficient manner under all the facts and circumstances." § 37–92–301(4)(b), 15 C.R.S. (1990). The diligence showing is project specific. "To obtain a finding of reasonable diligence, the holder of the right must prove continuous, project-specific effort directed toward the development of the conditional right commensurate with his capabilities." *Darby v. All J. Land & Rental Co.*, 821 P.2d 297, 300 (Colo.1991). The water court considers the totality of the circumstances in determining whether "the appropriator intends to put the water to a beneficial use and has taken concrete steps to finalize the appropriation." *Public Serv. Co. v. Blue River*, 829 P.2d 1276, 1280 (Colo.1992) (*Blue River III* ).

■ All acts necessary to complete the appropriation need not be accomplished in the same diligence period. What must be demonstrated is continued intent and progress toward finalizing the conditionally decreed appropriation. The existence of a plan, capability, and need for the water is examined periodically by the water court, at the close of each diligence period, to determine whether the applicant is entitled to retain the antedated priority. Monitoring of use and need for the conditional appropriation is a proper role of the water court in a diligence proceeding. *See City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 44–45 (Colo.1996). Considerations include but are not necessarily limited to: (1) economic feasibility; (2) the status of requisite permit applications and other required governmental approvals; (3) expenditures made to develop the appropriation; (4) the ongoing conduct of engineering and environmental studies; (5) the design and construction of facilities; and (6) the nature and extent of land holdings and contracts demonstrating the water demand and beneficial uses which the conditional right is to serve when perfected. Acts of natural persons, corporations, or other business entities in furtherance of the appropriation are to be counted towards diligence. *Blue River III*, 829 P.2d at 1279–80.

■ When a project is comprised of several features, work on one feature can be considered in determining whether reasonable diligence has been shown in the development of water rights for all features. *See* § 37–92–301(4)(b); *Talco, Ltd. v. Danielson*, 769 P.2d 468, 472 (Colo.1989); *Colorado River Water Conservation Dist. v. Twin Lakes Reservoir & Canal Co.*, 181 Colo. 53, 56, 506 P.2d 1226, 1228 (1973). Neither current economic circumstances beyond the control of the applicant, which adversely affect perfection of the conditional water right or the proposed use, nor the fact that one or more required governmental permits or approvals have not been obtained, are sufficient to deny a diligence finding if diligence is otherwise demonstrated. *See* § 37–92–301(4)(c), 15 C.R.S. (1990). However, "the ownership of and an applicant's right of access to a reservoir site are appropriate elements to be considered in the determination of whether a storage project will be completed." *FWS Land & Cattle Co. v. State Div. of Wildlife*, 795 P.2d 837, 840 (Colo.1990). As a result of the diligence proceeding, abandonment of all or part of the conditional water right may be ordered or all or part of the conditional right may be continued in effect. *See* § 37–92–301(5), 15 C.R.S. (1996 Supp.).

■ Accumulation of conditional water rights is subject to Colorado's anti-speculation doctrine. "Speculation on the market, or sale expectancy, is wholly foreign to the principle of keeping life in a proprietary right and is no excuse for failure to perform that which the law requires." *Knapp v. Colorado River Water Conservation Dist.*, 131

Colo. 42, 56, 279 P.2d 420, 427 (1955). A conditional decree may not be entered if "the proposed appropriation is based upon the speculative sale or transfer of the appropriative rights to persons not parties to the proposed appropriation." § 37–92–103(3)(a), 15 C.R.S. (1990). Either of two factors may defeat entry of a conditional decree:

(I) The purported appropriator of record does not have either a legally vested interest or a reasonable expectation of procuring such interest in the lands or facilities to be served by such appropriation, unless such appropriator is a governmental agency or an agent in fact for the persons proposed to be benefitted by such appropriation.

(II) The purported appropriator of record does not have a specific plan and intent to divert, store, or otherwise capture, possess, and control a specific quantity of water for specific beneficial uses.

§ 37–92–103(3)(a)(I) & (II).

These provisions are mirrored in subsection (9)(b) of section 37–92–305, 15 C.R.S. (1990), which states that:

(b) No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that the waters can be and will be diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and *that the project can and will be completed with diligence and within a reasonable time.*

(Emphasis added.) The above-emphasized reference to diligence in the statutory provisions governing conditional water rights plainly indicates legislative intent to require, in subsequent diligence proceedings, a demonstration that the decreed conditional appropriation is being pursued in a manner which affirms that capture, possession, control, and beneficial use of water can and will occur in the state,[6] thereby justifying continued reservation of the antedated priority pending perfection of a water right.

In furtherance of the policy against accumulating water rights priorities to the detriment of those who can and will place water to beneficial use, the General Assembly has required that an application for a finding of reasonable diligence must be made in the sixth calendar year after entry of the conditional decree or prior finding of reasonable diligence and, within that sixth year, no later than the last day of the month in which the decree or prior finding was entered.[7] *See* § 37–92–301(4), 15 C.R.S. (1990 & 1996 Supp.); *Darby*, 821 P.2d at 299. The prior conditional decree, or reasonable diligence determination, must state when the next diligence application is due to be filed. *See* § 37–92–301(4)(a)(III); *Darby*, 821 P.2d at 298.

 Failure to file a timely diligence application conclusively establishes abandonment of the conditional right. The appropriator's intent is not a factor because filing the application beyond the diligence period is barred by a jurisdictional statute of limitation.[8] *See Fort Lyon Canal Co. v. Purgatoire River Water Conservancy Dist.*, 818 P.2d 747, 750 (Colo.1991); *Town of De Beque v. Enewold*, 199 Colo. 110, 118, 606 P.2d 48, 53–54 (1980). This bar forwards the legislative intent to prevent decreed conditional

---

6. Proposed out-of-state use is subject to being decreed in accordance with the "Water Right Determination and Administration Act of 1969," (the Act) § 37–92–101 to –602, 15 C.R.S. (1990 & 1996 Supp.), the provisions of sections 37–81–101 to –104, 15 C.R.S. (1990), and other applicable requirements. *See* § 37–81–101(2), 15 C.R.S. (1990).

7. By action of the General Assembly, in recognition of the increasing complexity and time demands pertaining to governmental approvals and financing of a project, the diligence period has been extended from two years, ch. 373, sec. 1, § 148–21–17, 1969 Colo. Sess. Laws 1200, 1205–07, to four years, ch. 443, sec. 1, § 148–21–17,

1973 Colo. Sess. Laws 1523, 1523, to six years, ch. 269, sec. 1, § 37–92–301, 1990 Colo. Sess. Laws 1625, 1625–26.

8. When perfected, water rights exist as real property in Colorado under its constitution and laws. Abandonment of an absolute water right turns on the owner's express or constructive intent. *City & County of Denver v. Middle Park Water Conservancy Dist.*, 925 P.2d 283, 286 (Colo.1996). The water originally decreed to an abandoned right belongs to the stream and is subject to appropriation by others. *See Purgatoire River Water Conservancy Dist. v. Witte*, 859 P.2d 825, 833 (Colo. 1993).

rights from "accumulating without diligent efforts to convert the water to beneficial use," *Fort Lyon Canal Co.,* 818 P.2d at 751, to the detriment of those whose priority will be advanced by cancellation of the senior conditional priority or those who might proceed to initiate a new or enlarged appropriation.

## C.

### Subject Matter Jurisdiction

The filing of a diligence application, and notice thereof published in the water division resume, confers subject matter jurisdiction on the water court to proceed with a determination of reasonable diligence. "Subject matter jurisdiction concerns 'the court's authority to deal with the class of cases in which it renders judgment.'" *Monaghan Farms v. City & County of Denver,* 807 P.2d 9, 18 (Colo.1991) (quoting *Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.,* 734 P.2d 627, 636 (Colo.1987)). The nature of the claim and the relief sought are to be examined in determining whether the court has subject matter jurisdiction. *See Id.* Applications for reasonable diligence are within the special statutory jurisdiction of the water courts. *See* § 37–92–302, 15 C.R.S. (1990 & 1996 Supp.). Notice of the application is published through the resume procedure in lieu of service under C.R.C.P. 4. When the proceeding involves a matter assigned by statute to the water court, jurisdiction is thereby conferred over persons and property affected by the application. *See Gardner v. State,* 200 Colo. 221, 225–26, 614 P.2d 357, 360 (1980).

In Colorado, water rights are decreed to structures and points of diversion, *see id.* at 227, 614 P.2d at 361, in specified amounts for beneficial uses.[9] Its priority, location of diversion at the source of supply, and amount of water for application to beneficial uses are the essential elements of the water right. *See People ex rel. Simpson v. Highland Irrigation Co.,* 917 P.2d 1242, 1252

n. 17 (Colo.1996). The purpose of resume publication is "to give notice of the nature, scope and impact of the decree sought, thereby enabling any interested person to file a statement of opposition and contest the factual or legal grounds for issuance of such a decree." *Monaghan Farms,* 807 P.2d at 17. The reasonableness of the notice is determined by an inquiry standard: whether the notice is sufficient to reveal to potential parties the nature of the claim being made, so that they may determine whether to participate in the proceedings and conduct further inquiry into the full extent of those claims. *See City of Thornton v. Bijou Irrigation Co.,* 926 P.2d at 29.

If a potential objector could have anticipated by the resume notice that "disputed rights might be at issue," that person cannot forego the opportunity to "investigate the claims further." *Id.* at 25. In cases where we have held notice to be inadequate, "the resumes are characterized by the complete absence of material information concerning the disputed water rights." *Id.* at 26. The "absence of any cognizable claim of harm resulting from the allegedly inadequate notice" is to be taken into account. *Id.* at 30.

Failure to comply with a statutory procedure or requirement does not necessarily equate to failure of subject matter jurisdiction. *See Blue River I,* 753 P.2d at 740. When the continued existence of a conditional water right is disputed, basic fairness favors trial on the merits of contested issues of fact and law. *See Public Serv. Co. v. Blue River Irrigation Co.,* 782 P.2d 792, 794 (Colo. 1989) (*Blue River II*). Here, the defect was not jurisdictional in nature.

## III.

Objectors' jurisdictional argument is founded here on the provision of section 37–92–301(4)(a)(I), which recites that:

(4)(a)(I) In every sixth calendar year after the calendar year in which a water right is conditionally decreed, or in which a finding

---

9. Minimum stream flow appropriations of the Water Conservation Board are the exception to this rule. *See Colorado River Water Conservation Dist. v. Colorado Water Conservation Bd.,* 197 Colo. 469, 476, 594 P.2d 570, 574 (1979); *City of Thornton v. City of Fort Collins,* 830 P.2d at 930–31.

of reasonable diligence has been decreed, *the owner or user thereof,* if such owner or user desires to maintain the same, *shall file an application* for a finding of reasonable diligence, or said conditional water right *shall be considered abandoned.*

(Emphasis added.) The water court strictly construed this provision to prevent substitution of real parties in interest beyond the diligence period. But we do not view party identification as an unalterable jurisdictional feature of an application. Section 37–92–302(1)(a) provides that: *"Any person* who desires a . . . finding of reasonable diligence . . . shall file with the water clerk in quadruplicate a verified application setting forth facts supporting the ruling sought. . . ." (Emphasis added.) C.R.C.P. 17(a) requires actions to be prosecuted by real parties in interest. Together with subject matter vesting in the water court by means of an application and resume notice, these provisions allow substitution of real parties in interest during water court proceedings.

Formal substitution should have been allowed here. The application was filed and verified by "JAMES A. WILLEY, AGENT" listing WRIKO, INC. as the applicant. Answers to interrogatories and production of documents in this case revealed that Willey owns a substantial portion of Dallas Creek Company and is a participant in ventures holding land and platted lots to which water may be applied.[10] In an affidavit filed in the case, Willey explained that, because WRIKO obtained the prior diligence decree, he thought the application needed to be filed in WRIKO's name. This exercise of non-technical common sense is supported by the record. First, the diligence period at issue commenced in May 1987 and WRIKO was not dissolved until January 1988. Hence, WRIKO'S activity or non-activity during the diligence period is pertinent to the reasonable diligence inquiry. Second, the notice of the diligence filing deadline was sent by the water court addressed to WRIKO. Consequently, as he states in his affidavit in the case, Willey might have believed that WRIKO must be named on the application.

Of greater significance is the fact that both the application and the resume notice in this case, the conjunction of the two conferring subject matter jurisdiction on the water court, *cf. Monaghan Farms,* 807 P.2d at 17, recite the name of the structure, Log Hill Pumping Plant, its point of diversion, and refer to the prior decrees and reasonable diligence findings, thereby placing the continuation of the conditional water right at issue. The application and resume notice also disclose that Dallas Creek Company is the purported user of this water right.

█ Water rights are decreed to structures and points of diversion, *see Gardner,* 200 Colo. at 227, 614 P.2d at 361, in recognition that a water right is a right of use and constitutes real property in this state, *see Green v. Chaffee Ditch Co.,* 150 Colo. 91, 98, 371 P.2d 775, 779 (1962), and the owners and users of such water rights may change from time to time. Water rights are tabulated and administered by appropriate description, location, priority, and amount. *See* § 37–92–401(1)(a), 15 C.R.S. (1996 Supp.) ("Such biennial tabulations shall describe each water right and conditional water right by some appropriate means and shall set forth the priority and amount thereof as established by court decrees."); § 37–92–304(8), 15 C.R.S. (1990) (Division and state engineers shall enter in their records the water court judgment and decree "determinations therein made as to priority, location, and use of the water rights and conditional water rights, and they shall regulate the distribution of water accordingly.").

█ Objectors had notice of the water right at issue and were neither misled nor substantially prejudiced by Willey's action in listing WRIKO as the applicant and then seeking, through counsel, the substitution of Dallas Creek Company. Hard on the heels of the objection period's closure, a law firm made an entry of appearance for Dallas Creek Company, obviously intending to pursue the diligence application on its behalf as

---

10. The process of subdivision approval by counties includes verification of a water supply. *See generally Board of County Comm'rs v. Bainbridge,*

*Inc.,* 929 P.2d 691, 702 (Colo.1996) (many entities are involved, including water authorities, in subdivision development).

the real party in interest.[11] While we believe that the law firm's judgment could have been exercised more appropriately by making the substitution motion earlier, we refuse to penalize the applicant by preventing substitution. "[R]esume notice requirements ... do not prohibit an amendment of an application for a water right 'when justice so requires,' and courts have allowed applicants for water rights to amend applications in the past." *United States v. Bell,* 724 P.2d 631, 636 (Colo.1986); *see* Rules 4, 6, Uniform Local Rules For All State Water Court Divisions, 7B C.R.S. (1996 Supp.) (Water Court Rules).

Inquiry in the case early disclosed that Willey's status as an agent was on behalf of Dallas Creek Company, the user that was actually in possession of the water facilities through which the perfected portion of the water right was being placed to beneficial use. Willey's explanation that he listed himself as agent for WRIKO, because the prior diligence finding was obtained by WRIKO, is understandable given his non-lawyer status. Acting without counsel and using the form supplied by the water court, *see* § 37–92–302(a), Willey filed the application to ensure that forfeiture of the conditional right would not occur. The fact that WRIKO was the owner of the water right during a part of the diligence period and was the addressee of the water clerk's notice that the application for diligence was due to be filed, *see* § 37–92–305(7), 15 C.R.S. (1990), supports Willey's caution in naming WRIKO, INC.

The water referee system invites and has led to informal practices, which include the filing of applications by those who are not attorneys. "Any person" may file a "verified application." *See* § 37–92–302(1)(a).[12] "The water judge must refer all applications

and statements of opposition ... to a water referee," who conducts an "investigation to determine whether the statements in the application are true, and then rules on the application." *Gardner,* 200 Colo. at 225, 614 P.2d at 359. The referee system, which operates like an administrative proceeding but within a judicial context, offers a speedy alternative to litigation in non-complex water cases:

> (4) The referee, without conducting a formal hearing, shall make such investigations as are necessary to determine whether or not the statements in the application and statements of opposition are true and to become fully advised with respect to the subject matter of the applications and statements of opposition.

§ 32–92–302(4).

Referees can make rulings in water cases which, if not protested, can be approved by the water judge as a decreed determination without the necessity of trial. *See* §§ 37–92–303, –304(4), 15 C.R.S. (1990). Whether such a practice is advisable or not, applicants and objectors sometimes file applications or statements of opposition and then seek counsel if the matter becomes contested, as happened here. Nevertheless, corporations properly proceed in litigation through counsel. The purpose of this rule is to guard against the unauthorized practice of law by those who are "not amenable to the general discipline of the court." *See Woodford Manufacturing Co. v. A.O.Q., Inc.,* 772 P.2d 652, 653, 654 (Colo.App.1988) ("When a corporation appears without counsel in violation of the general rule, a court must advise the corporation of the necessity that it be represented by counsel. A trial court cannot allow

11. Our conclusion that the water court abused its discretion in denying the motion for substitution of parties is based upon the fact that from September 3, 1993, until December 18, 1995, the parties proceeded before the referee and the water judge on the basis that the Patrick firm was representing Dallas Creek Company as the real party in interest to the application and all parties were participating in settlement discussions and preparation for trial on this basis. Although the Objectors early raised ownership issues regarding the water right, the motion to dismiss the application was not brought until December 18, 1995, twenty-seven months into the case.

12. A "person" may include an "individual" or a "corporation." § 37–92–103(8), 15 C.R.S. (1990). The Act does not require that the application may be filed only by a licensed attorney, nor are we aware of any case of this court so requiring. In proceedings before the referee, a corporation may appear through its corporate officers and non-lawyer agents; at the stage of protest or support for a referee's ruling, and thereafter, a corporate applicant shall be represented by a licensed Colorado practitioner. *See* Rule 1, Water Court Rules.

the corporation to appear and conduct a contested trial in propria persona.").

As pointed out by a Wyoming case cited by our court of appeals in *Woodford Manufacturing Co.*, the appearance in a judicial proceeding by a corporate officer without counsel can be cured through allowing a licensed attorney to make his or her subsequent appearance:

> [T]here may be cases in which the entry of a default judgment against a corporation may be justified on the ground that the corporation was improperly represented in the action by a non-lawyer corporate officer, but such is not justified in a case ... wherein the representation was very limited. The record does not reflect that the representation was made with knowledge of its impropriety, it was followed within a reasonable time by proper representation through an attorney admitted to practice before the court, and the other party was not substantially prejudiced thereby.

*Starrett v. Shepard*, 606 P.2d 1247, 1253–54 (Wyo.1980). In the case before us, when objections were filed and the issue was joined thereby, the Patrick firm, without prompting by the court, did appear in order to pursue the application on behalf of the water user company.

■ The purpose of resume notice is to elicit response by those who may be affected by adjudication proceedings involving water rights. *Cf. Bubb v. Christensen*, 200 Colo. 21, 25–26, 610 P.2d 1343, 1346 (1980) (failure to file statement of opposition to resume publication or take later action bars challenge to conditional decree). Willey, in fact, was an agent of Dallas Creek Company in filing the application leading to resume notice of the water right at issue and proceedings before the referee. *See* Rule 1, Water Court Rules. Corporations act through agents: "It is familiar law that a corporation can only act through its agents, and their acts within the scope of their authority are the acts of the corporation." *Orphan Belle Mining & Milling Co. v. Pinto Mining Co.*, 35 Colo. 564, 572, 85 P. 323, 325 (1906); *cf. Federal Deposit Ins. Corp. v. American Cas. Co.*, 843 P.2d 1285, 1293 (Colo.1992) (banking corporation acts through directors and officers).

Based on the standard of inquiry notice and absence of prejudice to Objectors and potential objectors enunciated most recently in *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d at 25, 26, 30, we hold that this application was timely filed and pursued by a user under claim of right within the applicable statutory requirements.

■ Colorado Rule of Civil Procedure 17(a) provides that every action "shall be prosecuted in the name of the real party in interest." "The real party in interest is that party who, by virtue of substantive law, has the right to invoke the aid of the court in order to vindicate the legal interest in question." *Goodwin v. District Court*, 779 P.2d 837, 843 (Colo.1989). In *Travelers Insurance Co. v. Gasper*, 630 P.2d 97, 99 (Colo.App. 1981), the substitution of plaintiff under C.R.C.P. 17(a) occurred on the day of trial.

■ Water application requirements should not be construed to defeat substitution of parties when a water user who depends upon the appropriation at issue has, in fact, filed a timely diligence application through an agent and the resume notice sufficiently describes the right for which diligence is sought. Typically, by amendment under C.R.C.P. 15, a substituted party benefits from the filing date of the original pleading; the substitution relates back to the original claim if adversely affected parties had sufficient notice of the "disputed occurrence and related institution of legal action so as to obviate any prejudice which might arise." *Id.* at 100; *see* Rule 4(a), Water Court Rules.

In prior cases upholding cancellation of conditional water rights, the application was either not timely filed, *see Fort Lyon Canal Co.*, 818 P.2d at 750, or the application did not identify some of the conditional water rights which the applicant, in the diligence proceeding, then sought to keep in effect, *see Town of De Beque*, 199 Colo. at 119–20, 606 P.2d at 54. The statute of limitations therefore controlled.

■ We are satisfied by the record here that the statute of limitations cannot be invoked, because an application identifying the conditional water right at issue was timely

filed by the water user's agent and basic fairness allows and requires participation in the diligence proceedings by the water user, Dallas Creek Company, through its counsel. *See Blue River II,* 782 P.2d at 794. Objectors have been unable to demonstrate any prejudice, other than their disappointment in not obtaining outright cancellation of the water right without trial, which would result from allowing Dallas Creek Company to proceed with the application. They are also unable to show how potential objectors are prejudiced, in light of the resume notice in this case. On remand, however, the water court should determine whether the substitution of Dallas Creek Company as a real party in interest should be noticed through the resume, and additional persons allowed to be admitted as objectors, should any of them desire to participate. *See* § 37–92–302(3)(b); Rule 4(c), Water Court Rules.

 Objectors raise title and ownership issues regarding the conditional water right. The special jurisdiction of the water court does not extend to title and ownership disputes regarding water rights; this jurisdiction is vested in the district court. *See Humphrey v. Southwestern Dev. Co.,* 734 P.2d 637, 641 (Colo.1987). Water rights can be bought, sold, and transferred in Colorado. *See Strickler v. City of Colorado Springs,* 16 Colo. 61, 70, 26 P. 313, 316 (1891) (sale of perfected agricultural right to city); *see also Lower Latham Ditch Co. v. Bijou Irrigation Co.,* 41 Colo. 212, 216, 93 P. 483, 484 (1907) (right to change point of diversion or place of use of water obtained by appropriation is an incident of ownership, subject to the non-injury doctrine). Water rights can be leased perpetually. *See Bennett Bear Creek Farm Water & Sanitation Dist. v. City & County of Denver,* 928 P.2d 1254, 1259–60 (Colo. 1996). Dallas Creek Company asserts that it holds a perpetual lease derived from the Kolowich Group which succeeded to the interests of WRIKO, INC.

 A party seeking a diligence finding has the burden of proving by a preponderance of the evidence that reasonable diligence has occurred. *See Municipal Subdistrict v. Rifle Ski Corp.,* 726 P.2d 635, 637 (Colo.1986). Whether Dallas Creek Company can establish that it is a party to the proposed appropriation, within the contemplation of section 37–92–103(3)(a)(I) & (II), and can demonstrate diligence, are to be determined on remand. In the course of subdivision and recreational development, as here, legal arrangements among developers and between developers and homeowners regarding water rights can be expected to change. A person desiring to pursue the conditional decreed appropriation to completion must show that the preferential status enjoyed for the initial appropriation is entitled to continuation under the antedated priority. This is accomplished by a demonstration of due diligence by an owner or lawful user of the conditionally decreed appropriation.

 The original conditional decree in this case was issued by the referee, with approval by the water court, suggesting that the nature and extent of the need for 10 c.f.s. of water and the ability to complete the appropriation with reasonable diligence was not tested in any adversarial evidentiary proceeding. Continued reservation of an antedated priority is subject to contest in a diligence proceeding to avoid speculation in priorities.[13] Even when an evidentiary demonstration has been made previously in connection with issuance of a conditional decree, or determination of reasonable diligence, circumstances regarding the continuing intent and capability to put the water to beneficial use under the decreed appropriation may change. All or part of the conditional water right may not survive. The test for water availability under the "can and will" doctrine assumes that conditional rights may not ripen into water rights as originally contemplated. *Board of County Comm'rs v. United States,* 891 P.2d 952, 970–71 (Colo.1995). When an adequate demonstration of diligence is made, however, the owner or user is

---

**13.** The anti-speculation doctrine does not apply to "substantiated projections" of municipal and quasi-municipal appropriations. *City of Thorn-* *ton v. Bijou Irrigation Co.,* 926 P.2d 1, 39, 50–51 (1996).

entitled to continuation of the conditional appropriation.[14]

## IV.

Accordingly, we reverse the ruling of the water court ordering dismissal of the application. We hold that the application filed by the agent for the user of the water right and resume notice providing notice to potential objectors conferred subject matter jurisdiction in the water court over the diligence proceeding in this case. We remand with directions to allow Dallas Creek Company to be substituted as the real party in interest and for further proceedings consistent with this opinion.

MULLARKEY, J., dissents.

Justice MULLARKEY dissenting:

I respectfully dissent from the majority opinion holding that the water court erred in refusing to allow Dallas Creek Water Company (DCWC) to be formally substituted as the real party in interest to the reasonable diligence action at issue in this case. By its own language, section 37–92–301(4)(a)(I), 15 C.R.S. (1996 Supp.), requires that every six years the "owner or user" of a conditionally decreed water right "*shall* file an application for a finding of reasonable diligence, or said conditional water right shall be considered abandoned." (Emphasis added.) In this case, the water court found that, despite DCWC's purported status as a user of the water right, DCWC failed to file an application for reasonable diligence before the deadline.

The reasonable diligence provisions at issue here should be strictly construed to require filing by an owner or user. Because the applicant was Wriko, Inc., a defunct corporation, which was neither an owner or a user of the water, the application did not satisfy the statutory requirements. That the person who filed the application in question, James A. Willey (Willey), was a non-lawyer does not excuse noncompliance. Moreover, it is within the water court's discretion whether to allow a real party in interest to substitute for an incorrect filing party after the expiration of the reasonable diligence deadline pursuant to C.R.C.P. 17(a). The evidence supports the water court's conclusion that DCWC's motion for substitution was not timely filed and its ruling should be upheld.

## I.

Section 37–92–301(4), 15 C.R.S. (1996 Supp.) states, in relevant part:

In every sixth calendar year after the calendar year in which a water right is conditionally decreed, or in which a finding of reasonable diligence has been decreed, the owner or user thereof, if such user or owner desires to maintain the same, shall file an application for a finding of reasonable diligence, or said conditioned water right shall be considered abandoned.

The diligence requirements of this section are in the nature of a statute of limitations. As the majority notes, "[s]ince conditional water rights function to reserve a priority date for an appropriation not yet achieved, they are subject to continued scrutiny to prevent the hoarding of priorities 'to the detriment of those seeking to apply the state's water beneficially.'" Maj. op. at 35 (quoting *Trans–County Water, Inc. v. Central Colo. Water Conservancy Dist.,* 727 P.2d 60, 65 (Colo.1986)). In furtherance of that objective, we have consistently held that the statutory provisions detailing the procedural requirements for filing a reasonable diligence application should be strictly construed. For example, in *Town of De Beque v. Enewold,*

---

**14.** The antedated priority is a vested right with regard to changes of water rights which may adversely affect the conditionally decreed appropriation when perfected. *See Rocky Mountain Power Co. v. White River Electric Ass'n,* 151 Colo. 45, 52–53, 376 P.2d 158, 162 (1962). The Water Court Rules now provide a mechanism for filing a notice of transfer or change of address with the water court regarding the "sale or other transfer of a conditional water right." *See* Rule 9, Water Court Rules. The purpose of the rule is to provide the water clerk with the information required to give notice of the reasonable diligence filing requirement to the transferee of the conditional right. *See* Rule 9(c), Water Court Rules. Without such information, the clerk is required to send the notice to the persons to whom the conditional decree or prior diligence finding was granted, to the last known address of record. *See* § 37–92–305(7).

199 Colo. 110, 606 P.2d 48 (1980), the water court cancelled the conditional water rights of a town and river district because they had failed to file their diligence applications within the statutory time period. 199 Colo. at 114, 606 P.2d at 50. We held in *De Beque* that failure to file a timely application mandated the cancellation of the conditional water right. *Id.* at 118, 606 P.2d at 53–54. We also held that omission of certain conditional rights from a diligence application due to a clerical error was not correctable once the statutory time period had expired. *Id.* at 119–20, 606 P.2d at 54.

Likewise, in *Fort Lyon Canal v. Purgatoire River*, 818 P.2d 747 (Colo.1991), an objector appealed a water court's decision to reinstate a conditional water right after initially cancelling the water right for failure to comply with the statutory deadline. 818 P.2d at 748. The holder of the conditional water right in *Fort Lyon* argued that its failure to file before the deadline was a result of mistake and inadvertence. *Id.* at 750. In holding that the water right was properly canceled by the water court, we stated that "mistake or inadvertence are insufficient to overcome failure to timely file." *Id.*

One of the basic rules of statutory construction requires us to give effect to the plain language of the statute if possible. *See City and County of Denver v. Gallegos*, 916 P.2d 509, 512 (Colo.1996). Here, the plain language of section 37–92–301(4) requires application by an owner or user of the water right in question, and the applicant was neither an owner or user. The majority avoids the statutory language by stating that it does "not view party identification as an unalterable jurisdictional feature of an application." Maj. op. at 39.

The majority's position, however, is inconsistent with the statutory language and the policy articulated in *De Beque* and *Fort Lyon*. As noted above, we held in those cases that the procedural requirements for reasonable diligence applications were to be strictly construed. Further, the majority's decision directly conflicts with the notice provisions of the statute. For example, after an application is filed, the statute directs the water clerk to prepare and publish a resume of the application which includes "the *name and address of the Applicant,* a description of the water right or conditional water right involved, and a description of the ruling sought." § 37–92–302(3), 15 C.R.S. (1990) (emphasis added). Inclusion of this publication requirement indicates a legislative determination that the identity of the applicant was an essential requirement and contradicts the majority's finding that naming a proper applicant is not a jurisdictional requirement.

Clearly, a party's status as an owner or user of a water right is relevant to determine its ability and intent to diligently put the water to beneficial use. *See Public Serv. Co. v. Blue River Irrigation Co.*, 829 P.2d 1276, 1278 (Colo.1992) (*Blue River III* ) (stating that, in a reasonable diligence action, information regarding a corporate applicant's shareholders was relevant because the shareholders will actually exercise the rights held by the plaintiff). Also, as noted above, the statute requires that the resume notice include the name of the applicant. *See* § 37–92–302(3), 15 C.R.S. (1990). Therefore, the legislature's choice to specifically require that the owner or the user of a conditional water right actually file the application for reasonable diligence cannot be dismissed as insignificant. Under the majority's analysis, it apparently makes no difference who files the application so long as the water right itself is sufficiently described and the real party in interest eventually makes a motion for substitution. Such an interpretation of the application requirements is in derogation of the legislature's intent to prevent the hoarding of conditional rights by establishing a precise set of criteria which must be met to prove due diligence. It also opens the door to abuse of the diligence process because the majority places no limits on the third parties who may file diligence applications.

To support its assertion that "failure to comply with a statutory procedure ... does not necessarily equate to a failure of subject matter jurisdiction," maj. op. at 38, the majority cites *Public Service Co. v. Blue River Irrigation Co.*, 753 P.2d 737 (Colo.1988) (*Blue River I* ). I find *Blue River I* inapposite. In *Blue River I,* an objector, Public Service Co. (Public Service), failed to file a

timely motion to intervene but instead joined a reasonable diligence action by entering its appearance after the time for filing an opposition had expired. Although Public Service had not followed the proper procedure, the water court allowed it to join the action. *Id.* at 738. We analogized Public Service's entry of appearance to a defective motion to intervene, and we upheld the water court's exercise of discretion. We held that the applicant had waived its right to challenge Public Service's participation in the case because the applicant failed to object at the pretrial conference or any other time prior to trial. *Id.* at 740–41. Here the majority overturns the water court's discretionary act denying as untimely DCWC's motion for substitution of parties. Correct application of *Blue River I* to the present case would result in upholding the water court because the record in the present case indicates that the objectors questioned the standing of DCWC long before DCWC made its motion for substitution.

Failure to name an actual owner or user of the conditional water right in a timely filed application should result in the abandonment of the conditional water right. Like the prior diligence cases this court has considered, the owner or user of this conditional water right failed to file a diligence application within the statutory time frame. Moreover, as with *Fort Lyon* and *De Beque*, such a mistake should not be excused because of inadvertence, neglect, or a clerical error. Thus, I would hold that Willey's allegedly inadvertent failure to name DCWC as the applicant resulted in an untimely application which was a proper grounds to dismiss the action.

## II.

Even if the failure to name an owner or user as the applicant is not fatal, the water court properly denied DCWC's motion to substitute itself as the real party in interest.

The majority holds that the water court in this case was required to allow the substitution of parties because C.R.C.P. 17(a) provides that, "every action 'shall be prosecuted in the name of the real party in interest.'" Maj. op. at 41 (quoting C.R.C.P. 17(a)). The majority supports its conclusion that the motion for substitution in the present case was timely by relying on *Travelers Insurance Co. v. Gasper,* 630 P.2d 97 (Colo.App.1981), where the court of appeals affirmed a trial court's order allowing the substitution of a plaintiff pursuant to C.R.C.P. 17(a) on the day of trial. *See* Maj. op. at 41. I find the majority's reliance on *Travelers* to be misplaced.

*Travelers* was a personal injury case and concerned the substitution by the injured party's insurer as the plaintiff because the insurer had already paid uninsured motorist benefits to the injured party who was the original plaintiff. 630 P.2d at 98. Unlike the present case, the trial court granted the motion for substitution. The only issue addressed in *Travelers,* was whether the defendant was prejudiced by reason of the district court's order permitting the substitution to relate back to the filing date of the original complaint. In fact, the court of appeals specifically stated that "[t]he propriety of the [district] court's ruling substituting [the insurer] for the original plaintiffs ha[d] not been challenged and [was], therefore, not an issue on ... appeal." *Id.* at 99. Thus, the court of appeals' opinion in *Travelers* did not address the issue with which we are confronted here, namely, whether the motion for substitution should have been granted in the first place. *Travelers* provides no help in resolving this case.

While it is true that Colorado courts have recognized afteracquired standing through substitution of parties pursuant to C.R.C.P. 17(a), I would hold that such a substitution must be made within a reasonable time as determined by the trial court.[1] Unlike *Trav-*

---

1. Unlike C.R.C.P. 17(a), the parallel federal rule requiring that all actions be prosecuted by a real party in interest specifically states that substitution shall have the same effect as if the action had been commenced in the name of the party. Fed.R.Civ.P. 17(a). In other words, as the majority concludes here, the substitution relates back to the original claim and the substituted party benefits from the filing date of the original proceeding. The federal rule also provides, however, that a court is not to dismiss an action on the grounds that it is not being prosecuted in the name of the real party in interest until it allows a *reasonable* time for substitution after the objec-

*elers,* the district court in this case denied the motion for substitution as untimely. Further, considering the water court's finding that the objectors raised their concern about the standing of DCWC at least one year before the motion for substitution was made, I would hold that it was within the water court's discretion to deny the motion because a reasonable time in which to file the motion had passed.

The majority contends that Willey's failure to name DCWC as an applicant was obviated by the fact that counsel for DCWC promptly entered an appearance, answered discovery requests, responded to motions, and prepared for trial. Maj. op. at 33. This conclusion overlooks the fact that the key issue in this case is whether the water court should have granted DCWC's motion for substitution when it was filed nearly three years after the application deadline expired and at least one year after the objectors expressed their concern about DCWC's standing. As noted above, the record supports the water court's ruling that the motion for substitution was untimely.

The majority also appears to conclude that the water court erred in denying the motion for substitution without considering the lack of prejudice such a substitution would cause for the objectors. According to the majority, the objectors were "unable to demonstrate any prejudice, other than their disappointment in not obtaining outright cancellation of the water right without trial." Maj. op. at 42. However, if the majority is correct and the water court utilized an inappropriate standard by failing to consider the prejudice which would be caused by substitution, the existence of prejudice is a question of fact which should be decided by the water court on remand. It is inappropriate for this court to decide that the objectors were not prejudiced when the objectors had no reason to know that they should present evidence of prejudice. The record contains two pleadings and a letter filed by the objectors, who then were proceeding *pro se,* in August 1993, December 1994, and January 1995, question-

ing Wriko's status as an applicant and indicating the objector's confusion as to the ownership of the water right. If we are limited to the record now before us, I would find that the prejudice issue weighs in favor of the objectors because DCWC has made no showing that would excuse its delay in filing its motion for substitution of parties. That lengthy delay, standing alone, is prejudice to the objectors and to the legal process itself. There is no reason why the objectors should have had to deal with a phantom applicant for an extended period of time.

The majority places great weight on the fact that the incorrect application that was filed in this case was prepared by a non-lawyer. According to the majority, "Willey's explanation that he listed himself as agent for WRIKO because the prior diligence finding was obtained by WRIKO, is understandable given his non-lawyer status". Maj. op. at 40. While it is true that in some areas of law complaints filed by non-lawyers can be held to less stringent standards than those drafted by attorneys, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), in many cases the procedural requirements for non-lawyer parties are identical to those required for parties represented by counsel. *See e.g., People v. Denton,* 757 P.2d 637, 638 (Colo.App.1988) (holding in criminal case that the same discretionary standard governs a *pro se* defendant's request for a continuance because a *pro se* defendant is entitled to no greater safeguards or benefits than if she were represented by counsel). More specifically, we have held in numerous contexts that statutes of limitation apply equally to non-lawyer litigants acting *pro se* and to those litigants represented by counsel. *See Graham v. Gunter,* 855 P.2d 1384, 1385 (Colo.1993) (stating that limited exception requiring trial court to convert habeas petition filed by *pro se* inmate into motion for postconviction relief does not apply if claim is barred by statute of limitations); *Southeastern Colo. Water Conservancy Dist. v. Cache Creek*

tion is made. *Id.* In my view, requiring that a motion for substitution be made within a reasonable time period after an objection is made should be equally applicable under the Colorado

rule. Therefore, a trial court should have the discretion to deny a motion for substitution from a real party in interest if the trial court finds that the motion was untimely.

*Mining Trust,* 854 P.2d 167, 175 n. 8 (Colo. 1993) (concluding that even if litigant's motion could be construed as an unartful *pro se* rule 60(b) motion or motion to amend, the concept of equitable tolling was inapplicable because the motion was not timely); *Johnson v. Gunter,* 852 P.2d 1263, 1267 (Colo.1993) (stating that district courts must be cognizant of the applicability of statutes of limitation to *pro se* habeas petitions).

As applied to this case, I do not agree that the detailed filing procedures for reasonable diligence actions that are mandated by statute should be less stringently applied to non-lawyer applicants. Plaintiffs and objectors in water court cases often appear without the assistance of counsel, *see* maj. op. at 40, and our prior diligence opinions make no distinction on this basis. I would hold that our previous decisions strictly construing these statutory provisions are equally applicable to non-lawyer applicants and to applicants represented by attorneys. Further, there is no indication that DCWC was unable or without the resources to seek the help of counsel prior to filing the application. While corporations may choose to send a non-lawyer to file reasonable diligence applications, *see* maj. op. at 40 n. 12, I do not agree that such a choice should result in relaxing the application requirements. Thus, I am not persuaded that Willey's status as a non-lawyer has any bearing on the issue to be decided here.

### III.

One of the express purposes of the diligence provisions is to prevent the accumulation of unused and under-utilized conditional water rights. In many cases, this legislative purpose is best accomplished by supporting the ability of the water courts to enforce the strict filing provisions of the statute. Here, the water court correctly found that the only application for reasonable diligence that was filed in this case was filed by a dissolved corporation that was no longer an owner or a user of the disputed water right. Further, while C.R.C.P. 17(a) arguably provides for the substitution of parties in a reasonable diligence proceeding to ensure that the action is prosecuted by the real party in interest, DCWC's motion for substitution was filed at least one year after the objectors raised the standing issue. In my opinion, therefore, it was within the water court's discretion to deny DCWC's motion for substitution as untimely and dismiss the action for lack of subject matter jurisdiction. Accordingly, I respectfully dissent.